## DOROTHY F. MANSFIELD (NOW KNOWN AS DOROTHY F. HAWKER) v. ROBERT R. MANSFIELD.[1]

April 21, 1950.

No. 35,047.

*Samuel Saliterman,* for appellant.
*Vennum, Neville, Wright & Newhall,* for respondent.

LORING, CHIEF JUSTICE.

This case relates to the care and custody of Michael George Mansfield, born November 26, 1942, and to the necessary support money for such child. In the divorce decree, the court awarded the sole custody, care, and control of the child to plaintiff, his mother. It gave Robert Mansfield, the father, the right to take his child home

---

[1]Reported in 42 N. W. (2d) 315.

every second Saturday at 9 a. m. and to return him not later than 5 p. m. the following day. Defendant was given the right to have the child for five consecutive days during the Christmas holidays and for six consecutive weeks during the summer holidays, with the right of the mother to have the child every other Saturday and Sunday during this period. In addition, the court denied an application for an order to turn over to the mother certain moneys on deposit in the Farmers & Mechanics Savings Bank of Minneapolis in trust for Michael, and it ordered defendant to pay to plaintiff $40 per month as support money, except for the six-week period in the summer. Plaintiff appeals from this order and from the order denying her motion to award her the funds in trust and for increased support money.

Dorothy F. Mansfield, now Dorothy Hawker, and Robert Mansfield were divorced May 22, 1946. Dorothy was awarded sole custody and control of their son, Michael, but she made no claims for support at that time. May 26, 1947, on the application of Robert Mansfield, the court gave him the right to have his son between the hours of 9:30 a. m. and 7 p. m. every other Sunday. July 29, 1948, an amended judgment and decree was entered awarding $40 a month as support money to be paid to the Farmers & Mechanics Savings Bank of Minneapolis in trust for Michael. At the same time, the court gave Robert Mansfield the right to take his son home for visits every other Sunday during the period when the public schools were in session and the further right to have Michael for reasonable periods and upon reasonable occasions during the vacations. This amended judgment and decree was entered following a stipulation to that effect between the parties dated July 29, 1948.

The present proceeding originated on Robert Mansfield's motion to have the child for additional periods of time. Thereupon, plaintiff moved the court to amend the judgment so as to increase the support payments from $40 to $60 per month, to be paid to her, and for an order awarding her the moneys in trust.

Defendant lives with his mother and father at Golden Valley, which is about eight miles from plaintiff's home. He earns $400 to

$425 a month, and he had an income in 1948 of $6,500. In January 1947 defendant remarried. He and his second wife had a son, but when it was discovered that his wife and son were afflicted with tuberculosis they were taken to Glen Lake Sanatorium. They were at Glen Lake at the time of the hearing, although defendant expected his son home in the summer and his wife around the first of the year.

Plaintiff is a physical education instructor at Central High School, Minneapolis. She was 38 years old at the time of the hearing and has been teaching since 1936. In July 1948, she married William Hawker, also a teacher at Central High School. They live with her parents in Minneapolis.

■ The principal issue is whether the court abused its discretion in ordering a divided and shifting custody of Michael. We have often declared that shunting back and forth between divorced parents is usually not in the best interests of the child,[2] but each case must be determined on its own facts. The conditions in the homes, the age and sex of the child, the attitude of the parents and their treatment of the child, and the distance between homes are some of the factors to be considered.

Before this court will reverse an order of the trial court in such a matter, it must be shown that there has been an abuse of judicial discretion. Spratt v. Spratt, 151 Minn. 458, 185 N. W. 509, 187

[2]Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312 (girl three and one-half years old; order for divided custody modified until she was at least six years old); State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329 (shunting of girl five years old to and fro for six-month intervals between Duluth, Minnesota, and Iowa; father implanted fear and terror of mother in child's mind and neglected her medical care; often left her in charge of a maid, who had no real interest in her care and welfare); Larson v. Larson, 176 Minn. 490, 223 N. W. 789 (six-year-old boy; parties lived in different states; child would have had to spend most of his time traveling); Eberhart v. Eberhart, 149 Minn. 192, 183 N. W. 140 (five-year-old boy); Rice v. Rice, 181 Minn. 176, 231 N. W. 795 (seven-year-old girl; need for permanent home stressed; changing of custodians and homes deplored); McDermott v. McDermott, 192 Minn. 32, 255 N. W. 247 (three-year-old boy; influences hostile to mother; shunting between Luverne and Worthington, Minnesota).

N. W. 227. The trial judge is in a much better position to determine the question than we are. See, Spratt v. Spratt, 151 Minn. 458, 464, 187 N. W. 227, 229. He sees the parties and hears the testimony and usually has considerable experience in these matters. In the case at bar, it appears that the boy will soon be eight years old. The home of the defendant's parents, where he and his family now live, is being enlarged by two bedrooms and a bathroom and is only about eight miles away from that of the plaintiff. His wife and son will not be released from the sanatorium until they are completely recovered. It is conceded that the grandparents of both parties are fine people, and there is no doubt that they love the boy and treat him with care and affection. There is no evidence of maltreatment of the son by his father. As the boy grows older, he may need, as well as want, the companionship of his father. We fail to see any clear abuse of discretion. See, Spratt v. Spratt, 151 Minn. 458, 465, 187 N. W. 227, 229; Larson v. Larson, 176 Minn. 490, 492, 223 N. W. 789.

Plaintiff's evidence is not strong. She testified that after visits with the father the boy returned irritable and tired; that he would speak to her as if she were not his mother, use swearwords, and refuse to obey. The outstanding fact in this case is that the child is nervous. The insecurity resulting from the divorce itself is probably the central cause, and, as long as the parents are playing the child off against each other, this condition is going to persist, unless the father is not allowed to see the child at all—an arrangement which is not requested by the mother, nor one which we can say, as a matter of law, should be made. The welfare of the child really depends upon the attitude of his parents and their treatment of him. No court can change this by judicial fiat.

■ Plaintiff contends that the court erred in refusing to turn over to her the moneys in trust for Michael. The provision for the trust fund was not arbitrarily directed by the trial court. Cf. Quist v. Quist, 207 Minn. 257, 290 N. W. 561. On the contrary, it was a carefully considered question, resulting in a written stipulation executed by the two parties, and the court was asked to make the order. We

agree with the trial court's determination. The rule, based on the quasi-contractual obligation of the father to reimburse the mother for support payments (Beigler v. Chamberlin, 138 Minn. 377, 165 N. W. 128, L. R. A. 1918B, 215), does not apply where the mother has agreed with the father on the method by which the payments are to be made.

Plaintiff contends that the trial court erred in not increasing support payments from $40 to $60 per month. This question is largely within the discretion of the trial court and will not be reversed on appeal except for a clear abuse of discretion. Fruen v. Fruen, 228 Minn. 391, 37 N. W. (2d) 417; 1 Dunnell, Dig. & Supp. § 399. We do not find such abuse here. The father appears ready and willing to assume any large expenditures which may occur. He has paid medical bills in the past and appears willing to pay them in the future. Forty dollars should be adequate to cover the daily needs for food and clothing of a child of this age. See, Fruen v. Fruen, 228 Minn. 391, 392, 398, 399, 37 N. W. (2d) 417, 418, 421; Toebe v. Toebe, 225 Minn. 323, 324-325, 30 N. W. (2d) 585, 586.

Plaintiff-appellant is allowed her costs and disbursements plus $100 attorney's fees in this court.

Order affirmed.