CLIFF ELMER WILLIAMS v. W. W. WALLWORK, MOOR-
HEAD, INC. AND OTHERS.
THOMAS FROISNESS, RELATOR.[1]

May 19, 1950.

No. 35,143.

*Stiening, Olson & Thysell,* for relator.
*James M. Witherow,* for respondent Cliff Elmer Williams.
*Reynolds & McLeod,* for respondents W. W. Wallwork, Moorhead,
Inc., and Hardware Mutual Casualty Company.

LORING, CHIEF JUSTICE.

Certiorari to the industrial commission upon the relation of
Thomas Froisness to review an order of the commission granting
compensation to petitioner, Cliff Elmer Williams.

The sole issue before this court is whether the facts sustain the
conclusion that the relationship between Froisness, relator herein,
and Williams, respondent, was that of employer-employe or whether
it was conclusively proved that Froisness and Williams were either
partners or joint adventurers. The referee found that Williams was
employed by Froisness under a contract of hire. The industrial
commission affirmed.

---

[1]Reported in 42 N. W. (2d) 710.

The facts are as follows: On or about June 14, 1948, Froisness happened to be passing by the garage of W. W. Wallwork, Moorhead, Inc., on Center avenue in Moorhead, Minnesota, where he noticed some workmen sandblasting the walls. Being a general contractor, experienced in repairing buildings, he went in to see R. E. Lindblom, the general manager, for the purpose of offering his services and procuring any repair work that might be available. Froisness had just finished a job on a large garage at Detroit Lakes, Minnesota, so he suggested to Lindblom that instead of painting the building it should be plastered. He estimated that the cost would be approximately $200, but that he would have to see his "partner" to be certain.

Following this conversation, Froisness got in touch with Williams, who had plastered for him on previous occasions. Froisness asked him if the work could be done for $75, and Williams, who could see the building from where he and Froisness stood, told Froisness that it could not be done for that amount but that possibly it would be twice as much for labor. The two men went to Lindblom and discussed the job. Lindblom testified that Williams and Froisness said that the work could not be done for $200 but that they could do it for $200 if Lindblom would furnish the material. This was agreed upon, and the next morning, June 15, Williams and Froisness, with the help of William Kosen, a common laborer, whom Froisness had hired at a dollar an hour, set up the scaffolding alongside the building. With Kosen mixing the materials under Williams' direction, Williams plastered for the remainder of the day. The next morning, around 7:45 a.m., Kosen and Williams began work. Because the scaffolding did not enable Williams to reach the top of the wall, a small six-foot ladder was found and placed on the planks of the scaffolding and leaned against the wall. While working upon this extension ladder, Williams lost his balance and fell 15 or more feet to the ground, sustaining the injuries which have given rise to this proceeding.

Relator contends that Froisness and Williams engaged in the repair of the Wallwork garage as partners or as joint adventurers.

Williams specifically denies a partnership. On the contrary, he contends that he went to work on the assumption that he would receive a plasterer's wage of $2.25 an hour.

The testimony on the crucial issue in the case was in direct conflict. A determination thereof depended upon the credibility of the witnesses. This function belongs to the trier of facts. It sees and hears the witnesses. Cf. Mansfield v. Mansfield, 230 Minn. 574, 42 N. W. (2d) 315. Hence, if there is sufficient competent evidence to support the findings, this court will affirm. Babich v. Oliver I. Min. Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 904; Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3; Jensvold v. Kunz Oil Co. 190 Minn. 41, 250 N. W. 815; 6 Dunnell, Dig. & Supp. § 10426.

In the case at bar, there is sufficient evidence to justify the findings. On cross-examination, Williams testified that he and Froisness did not discuss the amount he was to receive per hour for plastering, but that, because he had worked for Froisness before on two different occasions for $2.25 per hour, he assumed that he would receive the same wage. Froisness admitted that Williams had worked for him before at $2.25 per hour. He had never been in the plastering business. In the past, when he had plastering to do, he hired someone to do it for him. The evidence shows that Froisness was a general contractor, moving and repairing buildings. When he saw the work going on at the Wallwork garage, he alone went to see Lindblom about procuring the repair job. He hired Kosen at a dollar an hour to assist Williams and paid him for what he did. He supplied the lumber for the scaffolding and ordered the cement and plastering materials, part of which he paid himself, receiving reimbursement from Wallwork later. After Williams' injury, he alone continued to deal with Wallwork. When the work was completed, he went to Lindblom, Wallwork's general manager, and received a check to "Thomas Froisness and Company" for $229.60, which he endorsed and cashed. According to Froisness, the "Company" was one Forthun, whom Froisness had found to go into partnership with him to finish plastering the garage. Yet, if a partnership with Williams had existed, as Froisness claims, there

is no evidence of its dissolution, and Williams has never received a financial settlement of any kind. In our opinion, the evidence of the past relationship of employer-employe and the manner in which Froisness operated, both as to past jobs and as to the instant one, supports the conclusion that the repair work for Wallwork was done under the same relationship of employer and employe which had existed between the parties on previous occasions.

Both Froisness and Williams testified that they had never been in partnership together before. The work on the garage involved mostly plastering. All the physical work which Froisness did was to help set up the scaffolding and get the material. It is not reasonable to believe that the agreement was to split the $200 to be received from Wallwork, 50-50, as Froisness claims. Under such an arrangement, Williams would be doing substantially all the work for half the receipts.

Relator relies heavily on the testimony of Lindblom as showing that Froisness and Williams were either partners or joint adventurers. In our opinion, Lindblom's testimony is insufficient to support relator's position. All it shows is that Williams estimated what the cost of the labor would be. This is in harmony with Williams' statement that he was asked by Froisness to make such an estimate. Froisness's own testimony on cross-examination dispels any doubts. He said:

"Q. Well, now, the only conversation, as I understand it, that you had with Mr. Williams in regard to this job was right at the beginning as to the cost of the work?

"A. Yes, sir.

"Q. And he simply gave an estimate; whether he thought it would be—

"A. He made him a price."

The evidence as a whole is sufficient to sustain the findings, Leland v. St. Olaf Lutheran Church, 217 Minn. 355, 14 N. W. (2d) 340; Olson v. Robert Street Realty Co. 181 Minn. 398, 232 N. W. 716; Young v. Melrose Granite Co. 152 Minn. 512, 189 N. W. 426,

29 A. L. R. 506; cf. Hindahl v. American Loan Society, 180 Minn. 447, 231 N. W. 408; Johnson v. Huhn, 137 Minn. 3, 162 N. W. 679; Arnold v. De Booy, 161 Minn. 255, 201 N. W. 437, 39 A. L. R. 403. Respondent is allowed $250 attorney's fee plus his costs and disbursements.

Affirmed.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.