# LOWERY J. SMITH v. JANE BECK SMITH.

163 N. W. (2d) 852.

December 27, 1968—No. 41157.

*Scallen, Farnes, Evidon & Harder* and *Harold E. Farnes,* for appellant. *Maurice L. Halpern* and *Donald T. Raleigh,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Sheran, JJ.

Rogosheske, Justice.

This appeal requires us to review a "Memorandum and Order" of the trial court resulting from a noncustodial father's postjudgment motion seeking a modification of a divorce decree with respect to custody of two daughters, visitation rights, and support payments. In denying the motion for change of custody, the court ordered judgment against the father for $2,400, representing accrued support payments which the father had refused to pay after the mother's removal of the daughters from this state to Cairo, Egypt, without his knowledge and consent or leave of court. The father appeals.

On March 12, 1965, plaintiff father was granted a default divorce from defendant mother. The "Judgment and Decree," which is part of the printed record, granted custody of their sons (one, then age 13, and twins, age 7) to the father and custody of their two daughters (then ages 9 and 11) to the mother. Provisions for reciprocal rights of visitation without specifying times or places were included, and the mother was awarded $200 monthly for the support of the daughters.

Some months after the divorce, the mother, who was teaching at the University of Minnesota and residing on the campus, began living with one Dr. Makky, a citizen of the United Arab Republic. About July or August 1966 the mother, Dr. Makky, and the children, on the pretense of an European trip, moved to Cairo where the mother married Dr. Makky. When the natural father became aware of this, he noticed a motion, returnable October 21, 1966, for a change of custody or in the alternative for an amendment of the decree "reducing the child support payments" and revising the visitation provisions "to include specific dates of visitation and automatic sanctions in the event visitation is not complied with by the defendant." On December 16, 1966, the mother's attorney made a countermotion on her behalf for entry of judgment against the father for the accrued support payments.

The motions were not heard until July 7, 1967. In support of the relief sought, the father submitted the mother's admissions and answers to written interrogatories dated in December 1966 and January 1967 and oral testimony by himself and other witnesses, including the maternal grandmother. The mother did not personally appear, but affidavits by her counsel and her father relating only to some of the details of her financial worth and earnings were submitted on her behalf. The record prepared for this case was unfortunately most incomplete and unsatisfactory.[1]

The trial court denied a change of custody, finding that "[t]he girls and their mother are closely attached to each other; and, as to the older one especially, there would be danger of emotional upset if she and the mother should be separated." The order relieved the father from making future support payments after August 1, 1967, "until such time as the children are returned by their mother to some place geographically where visitation with or by the plaintiff would be feasible." The court, however, concluding that the "needs of the children" and their "best interest [require] that the accumulated support money payments be made," ordered judgment against the father for accrued support payments from July 1966 to July 1967 totaling $2,400.

We have no hesitancy in affirming the court's refusal, in the exercise of its discretionary power,[2] to change custody. In spite of evidence that the mother exposed these young children to her morally suspect relationship with Dr. Makky, to the dangers of the Mideastern war which began in June 1967, and to the unhealthy and unsanitary living conditions prevailing in Cairo—which would have justified a change of custody—, the court quite understandably relied upon and accepted the testimony of the maternal grandmother. While not dogmatically stated, her testimony was to the effect that her daughter was an intelligent, well-educated, and competent mother who was capable of providing a proper home for

---

[1] In addition, the district court file, because of appellant's failure to fully comply with Rule 111.02, Rules of Civil Appellate Procedure, did not reach this court until long after the oral argument.

[2] Minn. St. 518.18; Wicklem v. Wicklem, 229 Minn. 478, 40 N. W. (2d) 69.

the children "anyplace." The court's finding quoted above is an accurate paraphrase of this testimony.[3]

The troublesome question, however, is whether, under the rules applicable to a father's obligation for support, there is any evidentiary basis for the order requiring the father to make a lump-sum payment of accrued support.

In postjudgment divorce proceedings, the trial court has broad discretion to order a revision or alteration of the judgment, including provisions for child support.[4] Such an order may be reversed on appeal only for an abuse of discretion in the sense that the order is arbitrary or unreasonable or without evidentiary support. Michalson v. Michalson, 263 Minn. 356, 116 N. W. (2d) 545; Larkin v. Larkin, 261 Minn. 414, 113 N. W. (2d) 75; Mansfield v. Mansfield, 230 Minn. 574, 42 N. W. (2d) 315.

Here, the father violated the divorce decree by failing to make the monthly support payments expressly required by the decree. The mother, however, also impliedly violated the decree by surreptitiously removing the minor daughters to the United Arab Republic, thereby defeating the right to reasonable visitation reserved to the father and provoking his refusal to pay support.

Applying the equitable doctrine of "unclean hands," it is clear that a party who has initially violated a divorce decree should not under ordinary circumstances be permitted to enforce the decree against the other party even though the latter subsequently violates the decree. This rationale seems to be the underlying theoretical basis for the well-established and oft-cited Minnesota rule first promulgated in Eberhart v. Eberhart, 153 Minn. 66, 189 N. W. 592, that, absent unusual circumstances, where a mother by wrongful or malicious conduct deprives the father of visitation rights or where she removes the child to another state and does not inform the father of the removal or the whereabouts

---

[3] In denying the father's posthearing motion to reconsider the order, including that which ordered a money judgment against him, the court relied upon a letter from the mother obtained through the efforts of the Department of Court Services. This letter is not in the court file.

[4] Minn. St. 518.18.

of the child, the father is relieved of the obligation to continue making support payments accruing thereafter.[5]

In Michalson v. Michalson, 263 Minn. 356, 357, 116 N. W. (2d) 545, 547, we clarified this rule by cautioning that it is "not a hard-and-fast rule which must have strict application in each case" to which it may appear to apply. Rather, a revision of child support payments depends upon the particular facts of each case. We emphasize, as we did in Michalson, that the welfare of the child or children of the marriage is the paramount consideration, and that providing support is primarily the father's parental duty. Thus, unlike the situation in which a husband might rely upon the commonly accepted view of automatic abatement of payment of alimony upon remarriage of the wife,[6] a father should not regard his obligation to pay support terminated where the mother wrongfully or maliciously deprives him of his visitation rights or otherwise defeats such rights by surreptitious removal of the children from the jurisdiction of the court. When such occurs, a proper concern by the father for the welfare of the children and regard for his duty to provide support makes it incumbent upon him, no less than upon the mother, to seek a modification of the decree to meet changed circumstances. While it may be argued that the mother, whose conduct created the problem, ought to be required to take the initiative and commence proceedings to justify her actions and her right to continued child support, her failure to do so cannot excuse the father from continuing to pay support where a refusal to make payments detrimentally affects the welfare of the child. An unreasonable delay in seeking a revision of the decree, coupled with a failure to pay resulting in detriment to the child, can very easily be viewed as selfish and embittered conduct designed to punish the mother in disregard of the physical needs of the child. It should be noted that in at least two cases involving unusual circumstances we have upheld postdecree orders compelling payment of accrued support

[5] See, Fish v. Fish, 280 Minn. 316, 159 N. W. (2d) 271; Curry v. Felix, 276 Minn. 125, 149 N. W. (2d) 92; State of Illinois ex rel. Shannon v. Sterling, 248 Minn. 266, 80 N. W. (2d) 13; Iverson v. Iverson, 243 Minn. 54, 66 N. W. (2d) 549; Hasse v. Hasse, 232 Minn. 234, 45 N. W. (2d) 383.

[6] But see, Boiteau v. Boiteau, 227 Minn. 26, 33 N. W. (2d) 703.

installments despite removal of the children from the state without consent of the father or leave of court.[7]

Unusual circumstances which alone or in combination with other facts may justify such an unconsented-to removal are: (1) The father's failure to make support payments prior to the removal;[8] (2) the necessity of quick action by the mother to accept an attractive job opportunity in another state;[9] and (3) the father's indifference to his visitation rights or to the removal of his children upon the transfer of the mother's new husband to a military post outside the United States.[10]

The record in this case reveals no such circumstances. On the contrary, what evidence there is concerning the circumstances of the removal of the daughters (viewed most favorably to the mother) appears to establish each and every requisite for a valid application of the rule absolving the father from his obligation to pay both future and accrued support. Without informing the father—indeed, by misrepresenting her plans—the mother changed the residence of the daughters to a foreign country and thereby, from any realistic viewpoint, defeated his visitation rights. Moreover, after removal, she persistently neglected to respond to the father's repeated requests for exact information of the whereabouts of the children, and she did not, either before or at the hearing, fully, completely, and candidly disclose the living conditions at the place of their new residence or the resources available to her in caring for the children.

Although there is certainly support for that part of the order suspending payment of future support until visitation rights are restored, we find neither evidentiary assurance that such suspension will not detrimentally affect the children nor sufficient evidence to justify entering judgment for $2,400. In our opinion, ordering judgment covering accrued installments could be justified despite the mother's misconduct toward the

---

[7] Michalson v. Michalson, 263 Minn. 356, 116 N. W. (2d) 545; Fjeld v. Fjeld, 201 Minn. 512, 277 N. W. 203.

[8] Fjeld v. Fjeld, *supra.*

[9] Cf. Anderson v. Anderson, 207 Minn. 338, 291 N. W. 508 (removal expressly prohibited by the divorce decree).

[10] Michalson v. Michalson, *supra.*

father if, for example, the record contained evidence tending to establish that the children were deprived of necessities during the period payments of support were not made, or that the children's needs were met only because the mother necessarily incurred indebtedness approximating the amount of the accrued installments. No such evidence was submitted. Rather, the disclosure that the mother is the beneficial owner of almost $200,000 of securities plus accumulated dividends of about $2,600 (all held for her by her father in Michigan) tends to establish that she was financially able to support the daughters during the interval. Although a recital of the income of the mother against expenses for the daughters may indicate the need of supplemental future support from the father, the suggested use of the $2,400 was to provide a swimming club membership to the older child and possibly to defray expenses for a trip to visit the mother's parents in Michigan. Further, there is no evidence that any money paid by the father could be transmitted to the possession of the mother in a country with which our Federal government has severed diplomatic relations. Finally, there is no evidence bearing upon the father's ability to pay a $2,400 judgment out of his annual earnings of $11,800 or upon the effect which a forced payment of it may have on his ability to provide care and support for the three children in his custody. Both of these factors, we believe, must necessarily be taken into account in determining the issue of a revision of the decree with respect to either past or future support payments.

Since we cannot conclude that there is adequate support for that part of the order granting judgment for $2,400, we must vacate that part of the order and any judgment entered pursuant thereto. Further, because the record submitted for review leaves us uncertain as to whether or not the needs of the children require the father to make future support payments, we remand for such further proceedings as the parties may deem necessary or desirable.

No costs or disbursements, including attorney's fees to the mother, are allowed on this appeal.

Reversed in part and remanded.