Bryan L. SLADE, Plaintiff
and Respondent,

v.

Eleanor A. Sanchez DENNIS,
Defendant and Appellant.

No. 15710.

Supreme Court of Utah.

April 19, 1979.

Judith Romney Wolbach, Salt Lake City, for defendant and appellant.

E. H. Fankhauser, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Plaintiff brought this action for declaratory relief, seeking to establish a right to visit the son of the parties, who was born out of wedlock. The District Court, Salt Lake County, found that plaintiff had legitimated the child pursuant to Section 78–30–12,[1] granted plaintiff the right to visit the child once a month, and ordered him to pay defendant $150 each month for the support of the child. The defendant appeals therefrom, her appeal centralizing on the matter of rights of visitation.

The child was born March 20, 1975. At the time of the birth, plaintiff was divorced from his first wife and defendant was unmarried. Both before and after the child was born, plaintiff lived in his own home but visited with defendant at her residence,

on occasion remaining from evening until the next morning. Plaintiff was present when the child was born and paid the expenses of the birth. He consented to the use of his surname on the child's birth certificate, and the child has carried the name of "Slade" since his birth. Plaintiff also, prior to the birth of the child, filed a "Declaration of Paternity" with the Bureau of Vital Statistics.[2]

During the first two years of the child's life, plaintiff visited him regularly, and took him on outings and to the homes of his parents and sisters, always referring to the child as his son. Plaintiff also provided the child with toys and clothing, and named the child as a beneficiary of his health and life insurance. The child called plaintiff "daddy" until defendant married as noted infra. He now calls defendant's husband "daddy."

On May 15, 1976, defendant married Carmen R. Dennis and thereafter refused to allow plaintiff to visit the child. Plaintiff then brought this action.

We note that our legitimation statute, Section 78–30–12, and similar statutes in other states, have historically been given liberal construction because of the law's strong policy in favor of legitimation.[3] It is also observed, however, that the older cases interpreting these statutes clearly demonstrate that this policy was adopted and followed for the purpose of conferring on an innocent child born out of wedlock the same inheritance rights as the more fortunate legitimate child. Defendant urges that the statute should not be so liberally applied where it is the father who is claiming rights to the child. Rights of the father of an illegitimate child have not been recognized

1. All statutory references are to Utah Code Annotated, 1953, as amended, except where otherwise specifically indicated. Section 78–30–12 provides:

 The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the

 time of its birth. The foregoing provisions of this chapter do not apply to such an adoption.

2. Section 78–30–4(3)(a), which was enacted after plaintiff filed this declaration, now provides that a father who files such a notice with the Bureau of Vital Statistics of Utah may claim his rights pertaining to his paternity of the child.

3. See *In re Garr's Estate*, 31 Utah 57, 86 P. 757 (1906).

in this State until recently[4] and this Court has not previously considered the applicability of Section 78–30–12 with reference to such rights of the father.

Defendant first contends that the District Court erred in its finding that plaintiff had complied with the requirements of Section 78–30–12, noted ante, and had thereby legitimated his child. The essentials of legitimation under Section 78–30–12 are: (1) public acknowledgment by the father, (2) receipt of the child into the father's family and (3) treatment of the child as legitimate.

Defendant does not dispute that plaintiff has publicly acknowledged the child to be his own. It is defendant's contention that plaintiff has not received the child into his family since the child has not resided with plaintiff nor has plaintiff functioned with defendant and the child as a single social or economic unit.

Courts in other jurisdictions, in interpreting statutes similar to Section 78–30–12, have generally given liberal construction to these statutes in finding that the father has received the child into his family. *E. g., Application of G. K.*, 248 N.W.2d 380 (S.D. 1976); *In re Richard*, 14 Cal.3d 783, 122 Cal.Rptr. 531, 537 P.2d 363 (1975); *In re Craven's Estate*, 268 P.2d 236 (Okl.1954). It has generally been held that a father can satisfy the receiving requirement by accepting the child into his home for occasional brief visits. *In re Wilson's Estate*, 164 Cal. App.2d 385, 330 P.2d 452 (1958); *In re Gathing's Estate*, 199 Okl. 460, 187 P.2d 981 (1947). Further, some courts have not been insistent that the child actually be physically present in the father's home. *Application of G. K.*, supra; *Blythe v. Ayres*, 96 Cal. 532, 31 P. 915 (1892). The receiving requirement has also been met where the father temporarily resides with the mother and child, even for a very brief period. *Hurst v. Hurst*, 227 Cal.App.2d 859, 39 Cal. Rptr. 162 (1964); *Serway v. Galentine*, 75 Cal.App.2d 86, 170 P.2d 32 (1946). A fa-

ther's custom of visiting the child at the mother's home has also been deemed sufficient. *Estate of Maxey*, 257 Cal.App.2d 391, 64 Cal.Rptr. 837 (1968).

 As this is an action in equity, our appellate review on the facts is limited for a consideration of whether the evidence clearly preponderates against the findings of the District Court. *Ream v. Fitzen*, Utah, 581 P.2d 145 (1978). We conclude that the evidence does not clearly preponderate against the District Court's finding (a) that plaintiff received the child into his family nor (b) that plaintiff treated the child as a legitimate child. The evidence clearly demonstrates that plaintiff, an unmarried man with no other children, introduced the child into the family he had; viz., his parents and his sisters and their children, and that personal relationships have already formed between the child and his cousins, aunts and grandparents, as well as with the plaintiff.

 Defendant's contention that her consent and relinquishment of custody were necessary before the child could be legitimated cannot be sustained. There is no such requirement for legitimation under Section 78–30–12. Also, the evidence is that the defendant not only consented, but insisted that plaintiff acknowledge the child by filing the Declaration of Paternity and giving the child the surname of "Slade" on the birth certificate. See *In re Richard*, 14 Cal.2d 783, 122 Cal.Rptr. 531, 537 P.2d 363 (1975), where the California court came to the same conclusion.

 Finally, we reach the question of whether the District Court erred by awarding visitation rights to plaintiff. Defendant maintains that the District Court's award of visitation rights violated her right to exclusive custody of her child established

---

4. See *Thomas v. Children's Aid Society of Ogden*, 12 Utah 2d 235, 364 P.2d 1029 (1961), in which this Court stated that the father of an illegitimate child has no rights under our law. That case was overruled in *State in Interest of* *Baby Girl M.*, 25 Utah 2d 101, 476 P.2d 1013 (1970), in which this Court recognized that a fit and proper father of an illegitimate child has a right to its custody as against all but the mother.

by Section 77–60–12.[5] This argument ignores that status which a child obtains by being legitimated under Section 78–30–12. Once a father complies with Section 78–30–12, his "child is thereupon deemed for all purposes legitimate from the time of its birth." Thus, once a child has been legitimated under Section 78–30–12, a dispute between the mother and father as to the father's visitation rights will be resolved by applying the law governing visitation of *legitimate* children, which is governed by Section 30–3–5.[6]

 The general policy of the law is that a parent will be denied visitation rights only under extraordinary circumstances.[7] This Court is reluctant to deny all visitation rights, unless the child's welfare is jeopardized thereby. See *Madsen v. Madsen,* 2 Utah 2d 423, 276 P.2d 917 (1954).

 The evidence adduced at trial falls short of establishing that the welfare of the child will be seriously jeopardized by plaintiff's exercise of his right to visit for six hours, one day each month. In a report, a psychiatrist, who had interviewed plaintiff, defendant, defendant's husband, and the child, stated that it would be "preferable" or "optimal" if plaintiff were denied visitation rights. Nowhere in the report was it stated how or to what degree, if any, the child's welfare would be seriously jeopardized by plaintiff's visits. A licensed social worker testified at trial that it was her opinion that the child might experience con-fusion, anxiety and conflict of loyalties because of his natural father's visits and consequently recommended limited visitation rights, if any.

Courts have been reluctant to find that the presence of some emotional upset by itself, resulting from exercise of visitation rights, sufficiently jeopardizes a child's welfare so as to require the drastic action of denying its parent visits with the child, altogether. *See,* e. g., *Radford v. Matczuk,* 223 Md. 483, 164 A.2d 904 (1960); *Mansfield v. Mansfield,* 230 Minn. 574, 42 N.W.2d 315 (1950); *Kellogg v. Kellogg,* 187 Or. 617, 213 P.2d 172 (1949).

 Further, visitation is a matter addressed to the District Court's sound discretion. *Reardon v. Reardon,* note 7, ante; *Friedland v. Friedland,* 174 Cal.App.2d 874, 345 P.2d 322 (1959). After careful examination of the record, we have found no basis for concluding that the District Court abused its discretion.

Affirmed. Costs to plaintiff.

CROCKETT, C. J., and HALL, MAUGHAN and STEWART, JJ., concur.

---

5. Said section provides:
 The father of [an illegitimate] child shall not have the right to its custody or control, if the mother is living and wishes to retain such custody and control, until after it shall have arrived at the age of 10 years, unless, upon petition to the district court for the county in which the mother resides, it shall upon full hearing, after notice to the mother, be made to appear that the mother is not a suitable person to have control and custody of such child; except that if a consent to the adoption of the child has been executed by the mother alone, or by the mother and fa-ther, as provided by other law, this section shall not apply.

6. This section provides in part: " . . . [v]isitation rights of parents, grandparents and other relatives shall take into consideration the welfare of the child."

7. See *Reardon v. Reardon,* 3 Ariz.App. 475, 415 P.2d 571 (1966); *Soderburg v. Soderburg,* 78 Idaho 177, 299 P.2d 479 (1956). *In re Two Minor Children,* 3 Storey 565, 53 Del. 565, 173 A.2d 876 (1961).