**Debra Jean QUADERER, Respondent,**

v.

**Gregory J. FORREST, Appellant.**

No. CX–85–2020.

Court of Appeals of Minnesota.

May 20, 1986.

Robert W. Kelly, Washington Co. Atty., James L. Beattie, Asst. Co. Atty., Stillwater, for respondent.

Robert W. Mudge, Gilbert, Mudge & Porter, Hudson, Wis., for appellant.

Considered and decided by HUSPENI, P.J., and LESLIE and CRIPPEN, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Gregory Forrest appeals from the trial court's order granting respondent Debra Quaderer's motion for an increase in Forrest's child support obligation to the amount provided for in the child support guidelines. On appeal, Forrest argues that (1) a substantial change in circumstances which would justify a modification has not occurred, and (2) the trial court should have departed downward from the child support guidelines. We affirm in part and remand for further findings.

## FACTS

In June 1983, Forrest and Quaderer entered into a stipulated agreement on the issue of JAQ's paternity. Under the agreement Forrest admitted paternity of JAQ and agreed to pay $100 a month in child support. Forrest did not request visitation at the time, but reserved the right to later visitation.

At the time of the agreement, Quaderer was employed at a convenience store earning approximately $400 a month. She was also receiving AFDC. Her net monthly income from these combined sources was between $500 and $600. Forrest was an apprentice tool and die maker and received a net monthly income of $1,040.

In August 1985, Quaderer filed a motion requesting an increase in child support based on a substantial change in circumstances. Forrest's net monthly income had increased from $1,040 to $1,660, approximately a 60% increase. Quaderer was no

longer receiving AFDC. She was working for a travel agency earning a net monthly income of $817.

When the original support obligation was ordered, Quaderer was living with her mother but her mother has since decided to sell her home, forcing Quaderer to rent her own apartment. As a result, she indicated that her expenses had increased to $1,138.13 per month. Her rent had increased from $200 a month to $270 a month; her utilities had increased from $20 to $38 per month and her day care costs had increased from $40 to $220 per month.

Forrest submitted a financial statement to show that his expenses had increased to $1,973.66 per month. A major reason for this increase was that Forrest bought a house and was making mortgage payments of $719 per month.

## ISSUES

1. Did the trial court abuse its discretion when it found that there was a substantial change in circumstances and increased Forrest's child support obligation to comply with the child support guidelines?

2. Did the trial court abuse its discretion when it refused to depart downward from the child support guidelines?

## ANALYSIS

### I.

### Modification of Support Obligation

■ A trial court has broad discretion when deciding whether to grant a motion for modification of child support payments. *Johnson v. Johnson*, 304 Minn. 583, 584, 232 N.W.2d 204, 205 (1975). This court will not reverse the trial court's decision unless there has been a clear abuse of discretion that renders the order arbitrary, unreasonable or without evidentiary support. *Smith v. Smith*, 282 Minn. 190, 193, 163 N.W.2d 852, 856 (1968).

In *Moylan v. Moylan*, 384 N.W.2d 859 (Minn.1986), the supreme court noted that this discretion is limited by Minn.Stat. § 518.64 (1984) which requires the trial court to use a two-step analysis:

(1) Do any of the four factors in Minn. Stat. § 518.64, subd. 2, alone or in combination, create a substantial change in circumstances warranting a modification of child support?; and (2) if so, after considering the needs of the children and the financial situation of the parties' spouses, what modification should the court make?

*Moylan*, 384 N.W.2d at 864.

The trial court's findings in the present case reflect that it carefully considered the factors expressly mandated by the legislature. *See Moylan*, 384 N.W.2d at 865. The trial court found that Forrest's income had increased 60% and Quaderer's income had increased between 36% and 63%. JAQ's needs were also found to have increased. Most significant was the increase of her day care costs which increased from $40 per month to $220 per month. Based on these findings the trial court concluded:

That there has been a substantial increase in [Forrest's] income and a substantial increase in the needs of the child, which render the terms of this Court's Order dated June 22, 1983, unreasonable and unfair.

Forrest argues that this conclusion is in error for several reasons. First, he claims that because his income was so low to begin with, a 60% increase does not actually represent a substantial change. Forrest's annual net income has risen approximately $7,400 ($12,480 to $19,920) since the June 1983 support order. This court has found similar increases to constitute a substantial change and the increase in this case is also sufficient to warrant a modification. *Neary v. Neary*, 366 N.W.2d 369 (Minn.Ct.App.1985) ($5,000 increase over $11,280 was substantial change for increasing child support).

■ Forrest also argues that he now has monthly mortgage payments of $719 so in fact his expendable income is even less than in 1983. Non-custodial parents have an obligation to commit a certain amount

of income to their children and this obligation must take precedence over debts owed to private creditors. *See* Minn.Stat. § 518.551, subd. 5(b) (1984); *Letourneau v. Letourneau,* 350 N.W.2d 476, 478 (Minn. Ct.App.1984); *Bakke v. Bakke,* 351 N.W.2d 387, 388 (Minn.Ct.App.1984). The fact that Forrest incurred this debt under the assumption that his child support payments would not increase is not a valid reason to deny a modification of child support. *See Scott v. Scott,* 352 N.W.2d 62, 64 (Minn.Ct. App.1984).

■ Next, Forrest argues that because Quaderer's salary has increased in proportion to if not more than her expenses a modification is not warranted. However, even if Quaderer's income has increased, a child is entitled to the benefits of the increased incomes of both parents. *See Derence v. Derence,* 363 N.W.2d 86, 89 (Minn. Ct.App.1985); *Letourneau,* 350 N.W.2d at 478–79.

■ Finally, Forrest contends that the increase in JAQ's needs is not substantial because the increase in day care cost is only temporary. The trial court found that:

> [Quaderer's] present daycare costs are $220.00 per month. [Quaderer] is on a waiting list in Ramsey County to obtain daycare on a sliding fee basis. She is 130th on the list, and it will be a long, but unspecified time before she will be eligible to receive daycare assistance. [Quaderer's] daycare costs have increased 5–½ times since this Court's Order of June 22, 1983.

The trial court did not err in finding that this increase represented a substantial change in JAQ's needs.

None of the arguments Forrest has set forth constitute a valid reason to deny Quaderer an increase in child support. The trial court did not abuse its discretion when it found there had been a substantial change in circumstances justifying a modification.

## II.

### Level of Support upon Modification

The trial court made commendably detailed findings in many respects. These findings would have been considered more than adequate under review standards which have been applied by this court in the past. However, some months after the trial court's order, the Minnesota Supreme Court issued its opinion in *Moylan,* 384 N.W.2d 859, and ruled that:

> in all child support cases not involving public assistance, the trial court must make specific findings of fact as to the factors it considered in formulating the award. This rule applies regardless of whether the award deviates from the child support guidelines in Minn.Stat. § 518.551, subd. 5.

*Id.* at 863.

■ Under *Moylan,* the trial court must consider the factors enunciated in Minn. Stat. § 518.17, subd. 4 (1984). 384 N.W.2d at 863–864. Those factors are:

(a) The financial resources and needs of the child;

(b) The financial resources and needs of the custodial parent;

(c) The standard of living the child would have enjoyed had the marriage not been dissolved;

(d) The physical and emotional condition of the child, and his educational needs; and

(e) The financial resources and needs of the noncustodial parent.

Minn.Stat. § 518.17, subd. 4 (1984).

*Moylan* requires that we review with special scrutiny the findings which form the basis for the trial court's award of $415 per month support, even though $415 is the recommended guideline amount. *See* 384 N.W.2d at 864. We conclude that the mandate of *Moylan* requires that the trial court's findings must be expanded in two areas: Quaderer's and JAQ's reasonable needs and Forrest's reasonable expenses.

■ In regard to Quaderer's and JAQ's needs, we note first that the trial court did

make findings regarding Quaderer's monthly income and regarding her monthly expenses for day care, rent, and utilities. The findings do not, however, indicate what amount is needed to meet Quaderer's and JAQ's overall reasonable monthly expenses. While Quaderer herself indicates that those expenses are $1,138.13, the trial court, pursuant to *Moylan*, must itself determine an amount that is reasonable. In regard to Quaderer's reasonable expenses, we request that the trial court consider to what extent cessation of Quaderer's AFDC grant resulted in the loss to her and JAQ of other benefits such as medical and dental coverage. We request, further, that the trial court consider the efforts and resources, economic and otherwise, which Quaderer may have expended to remove herself and JAQ from the AFDC rolls and to remain off those rolls.

In regard to Forrest, the trial court found that:

> [Forrest] testified that he has structured his budget based on the fact that his ongoing child support is $100.00 per month, and has incurred a mortgage which involves a payment, including interest, principal, and taxes, of $719.00 per month. [Forrest] further testified that he will be unable to make his mortgage payment if his child support is increased to guideline level based on his present net monthly income.

and concluded:

> That the fact that [Forrest] has structured his life with the assumption that his child support would remain at $100.00 per month is not a valid reason to deny [Quaderer] an increase in child support.

The trial court, however, made no finding as to what Forrest's reasonable monthly expenses would be. We believe such a finding is required by *Moylan*. Despite the trial court's implicit rejection of Forrest's high mortgage obligation as a basis for a downward departure from the guidelines, consideration should have been given to Forrest's housing expenses to the extent they were deemed reasonable by the court. Those reasonable housing expenses should

then be considered by the trial court in determining an amount of total reasonable monthly expenses for Forrest.

Forrest argues that there are additional reasons why an award of support below the amount set in the guidelines should have been ordered. Two of these reasons have recently been addressed in appellate court cases and are addressed here as a guide to the trial court on remand.

■ Forrest argues that the trial court should have departed downward because his child support obligation arose from a judgment of paternity and not a dissolution. This court recently confirmed that a deviation from the child support guidelines based on whether or not the child's parents had been married is not permissible. *Thompson v. Newman*, 383 N.W.2d 713, 716 (Minn.Ct.App.1986); *Pitkin v. Gross*, 385 N.W.2d 367, 370 (Minn.Ct.App.1986). Departure on such a basis violates the equal protection clause. *Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973).

■ Next Forrest argues that the trial court should have given more deference to the stipulation agreement between Forrest and Quaderer. While stipulations may encourage courts to exercise greater restraint when ordering support modifications, child support requirements relate to the nonbargainable interests of a child and are less subject to restraint by stipulation. *Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971). The trial court specifically addressed this issue in its findings and conclusions and properly put its primary emphasis on the welfare of JAQ. *See Moylan*, 384 N.W.2d at 865.

## DECISION

The trial court did not abuse its discretion by finding there had been a substantial change in circumstances that justified a modification in Forrest's child support obligation. While the trial court's findings in this case show a thorough and careful consideration of the facts and issues presented, in light of *Moylan* we must remand for

specific findings on the overall expenses of both parents and the needs of the child.

Affirmed in part and remanded for further findings.

CRIPPEN, J., concurs specially.

CRIPPEN, Judge (concurring specially).

I concur with the majority opinion. Determining the amount of Gregory Forrest's support obligation by referring only to statutory guideline charts, the trial court increased the monthly sum from $100 to $415. A markedly different approach is required by *Moylan v. Moylan*, 384 N.W.2d 859 (Minn.1986).

As the majority opinion indicates, the trial court acted within its discretion in deciding that the original support amount had become unreasonably low. Before *Moylan*, this plea for modification required an all-or-nothing decision, resulting alternatively in a monthly support award of $100 or $415. Now, acting under *Moylan*, there must be a second look at the facts supporting change to find indications of the amount of change that is reasonable and necessary.

Factors that had one meaning on the question whether to modify have different meaning when the amount of support is determined. Thus, as indicated in the majority opinion, only increases in Debra Quaderer's needs were relevant to the modification question, but all her needs are relevant in setting support. On the other hand, Forrest could not resist modification by asserting that his 1983 income relative to his reasonable needs was limited, because the change of his income was significant; however, when child support is set there must be an objective look at his ability to pay, not just his increased income.

An important issue on remand is the fact question on Forrest's reasonable needs. This factor should have had more attention when the trial court considered whether modification was appropriate. While I have agreed that the trial court did not abuse its discretion in deciding to modify the support award, it must be recognized

that this decision was based singularly on Forrest's increase in income; Quaderer's increased needs were offset by her increased income. Proof of an increase in Forrest's income had less significance to the extent it was offset by reasonable increases in his expenses. The remand and reconsideration of this factor should correct any prior oversight of the issue.

As we have this first occasion to apply the *Moylan* holding, two other questions have arisen and should be briefly addressed.

1. What are the "factors" to be weighed in determining the amount of support?

Although *Moylan* dealt with modification of an award, the decision addressed more generally the topic of setting support. As the majority opinion states, *Moylan* called for a two-step analysis in modification cases. *Id.* at 864. Once cause is found for modification, the statute permits, the supreme court noted, a new determination according to laws governing the setting of support in an "original proceeding." Minn. Stat. § 518.64, subd. 1 (1984). *See Moylan*, 384 N.W.2d at 864.

The remand ordered in *Moylan* called for findings on factors listed in the modification statute. *Id.* at 865 (citing Minn.Stat. § 518.64). This statute identifies these factors: "increased or decreased earnings of a party," "increased or decreased need of a party," and "the needs of the children." Minn.Stat. § 518.64, subd. 2. In addition, it is evident under *Moylan* that other statutory language is involved in the second step of the modification analysis, setting the new amount of support according to what might be done in an "original proceeding." *See* Minn.Stat. § 518.17, subd. 4 (1984). Somewhat similar factors bear on original support determinations, although the statute speaks of parental "resources" rather than income. *Id.* § 518.17, subd. 4(b), (e). Also, the statute refers to the needs of the child generally, but also requires attention to "educational needs" and the "physical and emotional condition of the child." *Id.* § 518.17, subd. 4(a), (d).

Moreover, when measuring the child's needs, the court must keep in mind the standard of living the parents might have provided had they remained married. *Id.* § 518.17, subd. 4(c). The trial court must also consider the child's "resources," presumably having regard for assets or income of the child other than parental earnings. *Id.* § 518.17, subd. 4(a). (Under new legislation, these portions of section 518.17 are included in the language of the guidelines statute, section 518.551. 1986 Minn. Laws ch. 406, § 4.)

In sum, according to my reading of Minnesota's statutory scheme, the amount of support is determined by considering six factors:

(i) The obligor's income, or "resources."

(ii) The obligor's needs.

(iii) The custodial parent's income, or "resources."

(iv) The custodial parent's needs.

(v) The child's needs, including special health and education needs, and keeping in mind a standard of living appropriate to the circumstances of the parents.

(vi) Resources of the child other than income or resources of parents.

2. Does application of *Moylan* signal an appellate court approach that has adverse policy implications?

It is apparent that the demand for particularized findings on child support issues taxes the trial courts in cases that have not previously enjoyed such careful scrutiny. Moreover, the approach may produce awards at variance with the guideline charts. Each of these consequences is necessary to meet vital policy needs.

The new demands for particularized findings are in accord with long-established disciplines for family law cases. *See, e.g., Wallin v. Wallin,* 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971). These disciplines are essential for effective appellate review and for showing parties the reasons for a judicial decision. *Moylan,* 384 N.W.2d at 863; *see Rosenfeld v. Rosenfeld,* 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976). While the demand for careful findings is burdensome, we are no longer at liberty to affirm decisions where material statutory considerations may have been overlooked.

Judicial respect for Minnesota's statutory child support guidelines has progressively and firmly increased the level of support for children from noncustodial parents, reducing the price children pay for difficulties of their parents. While future decisions may vary from the rigid guideline approach, the discipline of particularized findings offers children and both parents the benefits of a careful, complete judicial analysis of support obligations. Moreover, children remain entitled to parental support that is "necessary" and "reasonable," and it remains the obligation of the judiciary to protect this entitlement. *See* Minn.Stat. § 518.17, subd. 4; 1986 Minn.Laws ch. 406, § 4.