**STATE of Minnesota, Respondent,**

v.

**Larry Allen NELSON, Appellant.**

**No. C4–03–229.**

Court of Appeals of Minnesota.

Nov. 18, 2003.

Mike Hatch, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN; and Raymond F. Schmitz, Olmsted County Attorney, Rochester, MN, for respondent.

David T. Redburn, Brooklyn Park, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

On appeal from his conviction of criminal nonsupport of a child, appellant argues that Minn.Stat. § 609.375, subd. 2b requires the state to attempt to obtain a contempt order against an obligor for failure to pay child support during the time period specified in the complaint. Because the district court erred in concluding that contempt orders obtained for failure to pay during unrelated time periods satisfied the statutory prerequisite, but the statute does not apply to four of the five counts, we affirm in part and reverse in part.

## FACTS

Following the dissolution of appellant Larry Nelson's marriage, the district court ordered him to pay $739 per month in child support and child-care reimbursement for his two children. Subsequently, the court modified Nelson's obligation multiple times to reflect changes in circumstances and cost-of-living adjustments.

In December 1995, the district court found Nelson in civil contempt for failure to divulge information on his current income and assets. The court ordered Nelson to remain in custody until he paid $2,000 toward his arrearages, disclosed information regarding his income and assets, and worked out a payment agreement for his child-support arrearages. In May 1996, the court released Nelson after finding that incarceration would not induce him to comply with the court's order and that continued incarceration would be in violation of his due-process rights.

Nelson made partial child-support payments from August 1996 through February 1997, but stopped making payments when he quit his job. As of October 1997, Nelson's child-support and child-care arrearages totaled $17,671.

In January 1998, the district court found Nelson in civil contempt for consciously and willfully failing to pay child support despite having the ability to do so. The district court stayed Nelson's jail sentence, provided that Nelson complied with several purge conditions, including the requirement that he remain current in his child-support, child-care, and arrearage obligations. As of February 1998, Nelson's child-support and child-care arrearages totaled $19,985.

In April 1998, the district court found Nelson in civil contempt once again, for failing to pay his child-support obligation and for failing to comply with the district court's order. Nelson was incarcerated. In June 1998, the district court denied Nelson's motion for release because he had not complied with the purging conditions of the district court's order. Nelson's appeal to this court was dismissed, and the Minnesota Supreme Court denied further review. At a contempt-review hearing in September 1998, however, the district court released Nelson, finding that he was unresponsive to the coercive aspects of incarceration.

From January 1998 to August 2001, only four payments, all involuntary, were made toward Nelson's child-support obligation. In January 2002, the state charged Nelson with one count of felony nonsupport of a child, in violation of Minn.Stat. § 609.375, subd. 2a (2000 & Supp.2001). The complaint alleged that except for the four payments, Nelson did not pay child support between January 1, 1998 and January 24, 2002. In May 2002, the state filed an amended complaint, charging Nelson under the same statute with five counts of felony nonsupport of a child. The complaint charged that Nelson failed to pay child support during five 180–day periods: January 24 through December 31, 1999; January 1 through June 30, 2000; July 1

through December 31, 2000; January 1 through June 30, 2001; and July 1, 2001 through January 24, 2002.

On the morning of Nelson's October 2002 trial, Nelson brought a motion to dismiss the amended complaint because the state had not first attempted to obtain a court order finding Nelson in contempt for nonpayment during each of the five different time periods set forth in the complaint. The district court denied Nelson's motion, reasoning that the statute did not contain a time limitation regarding when the state must attempt to obtain a contempt order, and that sufficient probable cause existed because the attempt requirement had been satisfied by the previous contempt orders. The district court found Nelson guilty on all five counts of criminal nonsupport following a stipulated-facts trial. This appeal followed.

## ISSUE

As a prerequisite to prosecution of an obligor for criminal nonsupport of a child, does Minn.Stat. § 609.375, subd. 2b require that the state attempt to obtain a contempt order for failure to pay support during the same time period specified in the criminal complaint?

## ANALYSIS

 Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996). The fundamental rule of statutory construction is to look first to the specific statutory language and be guided by its natural and most obvious meaning. *State v. Edwards,* 589 N.W.2d 807, 810 (Minn. App.1999), *review denied* (Minn. May 18, 1999). But when a statute is reasonably susceptible to more than one meaning, it is ambiguous and subject to statutory construction. *Westchester Fire Ins. Co. v.*

*Hasbargen,* 632 N.W.2d 754, 756 (Minn. App.2001). The object of all statutory interpretation is to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (2002); *In re Welfare of C.R.M.,* 611 N.W.2d 802, 805 (Minn.2000).

The state may not charge a person with criminal nonsupport of a child "unless there has been an attempt to obtain a court order holding the person in contempt for failing to pay support or maintenance under chapter 518." Minn.Stat. § 609.375, subd. 2b (2002). Nelson concedes that the state obtained at least two contempt orders before filing the criminal complaint against him for nonsupport. But, because the periods of failure to pay covered by the contempt orders did not match the times specified in the complaint, Nelson argues that subdivision 2b's contempt-order requirement was not satisfied.

As a preliminary matter, subdivision 2b was not effective until August 1, 2001. 2001 Minn. Laws ch. 158, §§ 10, 13. Because the first four of the five counts against Nelson are for crimes entirely committed before that date, the contempt-order requirement does not apply to them. The fifth count, covering July 1, 2001 through January 24, 2002, was based on conduct occurring, at least in part, on and after August 1, 2001. Therefore, only the fifth count is subject to the contempt-order requirement. *See State v. Robinson,* 480 N.W.2d 644, 645 (Minn.1992) (holding defendant is subject to amended criminal statute if his criminal acts occurred at least in part after effective date of statute). Accordingly, we affirm Nelson's conviction as to the first four counts relating to crimes committed before the effective date of the statute and consider only the effect of the statute on the fifth count.

The state argues that subdivision 2b is "unambiguously" satisfied by the state's attempt to obtain contempt order at any

time and that the facts supporting the contempt need not be tied in time to the criminal complaint. We agree that subdivision 2b does not expressly contain the requirement of identical time periods, but we conclude that, read in context, the subdivision reasonably could require this consistency and therefore is ambiguous.

First, looking at the specific statutory language, subdivision 2b references chapter 518 as the source of the contempt provision serving as the prerequisite to criminal prosecution. Minn.Stat. § 609.375. Three sections in chapter 518 authorize contempt citations for failure to pay court-ordered support. Minn.Stat. 518.24, .617, .64 (2002). Under these sections, the child-support order itself is a prerequisite for civil-contempt orders. Underlying any child-support order are detailed findings reflecting the ability to pay and the specific support obligation. *See* Minn.Stat. 518.551 (2002).

By tying the criminal prosecution and the civil-contempt proceedings to the child-support order, the legislature created a three-step process to enforce child support: (1) a child-support order setting the appropriate amount and duration of payments under chapter 518; (2) civil contempt based on a violation of that child-support order; and (3) criminal nonsupport based on a violation of that child-support order.

Nonpayment of ordered child support is prima facie evidence of civil contempt. Minn.Stat. 518.24. A showing of nonpayment of court-ordered support necessarily means that there was a legal obligation to pay support on certain dates and that the obligor failed to pay on certain dates. The offense of criminal nonsupport similarly requires proof of both a legal obligation and a failure to pay. Thus, we conclude that subdivision 2b could reasonably be interpreted as requiring that the con-

tempt-order attempt embrace the same time period of nonpayment of child support as the criminal complaint.

Second, the felony nonsupport offense is based either on a violation continuing for over 180 days or on a violation amounting to nine times the monthly obligation. Minn.Stat. 609.375, subd. 2a. Here, the county alleged a continuing violation and set out the specific time period involved. An attempt to obtain a contempt order for a period outside of the alleged 180–day period could have no relevance to that period. Because both the civil-contempt order and the criminal conviction are time specific, we conclude that a reasonable interpretation of the statute could require the state to attempt to obtain contempt orders against Nelson for the same time period for which the charges are brought.

■■■ If a statute is ambiguous, it is permissible to look at legislative history to determine how the language should be read. *Baumann v. Chaska Bldg. Ctr., Inc.*, 621 N.W.2d 795, 797 (Minn.App.2001). By requiring as a prerequisite to prosecution an attempt to obtain a contempt order, the legislature provided a civil incentive to spur an obligor to remain current on child-support obligations. This is consistent with the purpose of civil contempt which is to induce compliance with an order favoring the opposing party through imposition of a sanction of indefinite duration, to be lifted upon compliance. *Minn. State Bar Ass'n v. Divorce Assistance Ass'n*, 311 Minn. 276, 285, 248 N.W.2d 733, 741 (1976). The legislative history of subdivision 2b indicates that the legislature added the contempt-order attempt prerequisite out of concern that nonsupport cases were "moving too fast to criminal prosecution and not compliance" and that seeking compliance with child-support orders should take precedence. *See* Hearing on S.F. No.1944 Before the Senate Comm. on

Crime Prevention (Mar. 30, 2001) (comments of Sen. Knutson).

■ Based on the language of Minn. Stat. § 609.375 as a whole, related statutes, and relevant history, we conclude that subsection 2b is reasonably susceptible to the interpretation that the state is required to attempt to obtain a contempt order for failure to pay support during the time period specified in the criminal complaint. Minn.Stat. §§ 645.16, .17 (2002). Because subdivision 2b is reasonably susceptible to this alternative meaning, we must resolve all reasonable doubt concerning the legislature's intent in favor of Nelson. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002) (holding that penal statutes are to be construed strictly so that all reasonable doubt concerning legislative intent is resolved in favor of the defendant). Thus, we hold that Minn.Stat. § 609.375, subd. 2b requires the state, as a prerequisite to prosecution, to attempt to obtain a contempt order for failure to pay child support during the time period specified in the complaint.

## DECISION

■ Before charging a person with criminal nonsupport of a child, the state must attempt to obtain a court order holding the person in contempt for failing to pay support during the time period specified in the complaint. Because the district court erred in its application of this amendment to Minn.Stat. § 609.375, we affirm appellant's convictions on the first four counts and reverse the conviction on the fifth count.

**Affirmed in part, reversed in part.**