STATE of Minnesota, Respondent,

v.

Larry Allen NELSON, Appellant.

No. A12–0071.

Supreme Court of Minnesota.

Feb. 12, 2014.

Lori Swanson, Attorney General, Saint Paul, MN; and Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant Olmsted County Attorney, Rochester, MN, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant State Public Defender, Saint Paul, MN, for appellant.

## OPINION

STRAS, Justice.

Appellant Larry Allen Nelson challenges his felony conviction under Minn.Stat. § 609.375, subds. 1, 2a(1) (2012), which criminalizes a person's omission and failure "to provide care and support" to a spouse or child when legally obligated to do so. Nelson argues that the record contains insufficient evidence to support his conviction because the State did not prove beyond a reasonable doubt that he omitted and failed to provide care to his children. Because we conclude that Minn.Stat. § 609.375 (2012) ("the care-and-support statute") required the State to prove that Nelson omitted and failed to provide both care and support to his children, we reverse Nelson's conviction.

### I.

Nelson and his ex-wife have two adult children. Beginning in 1993, when the children were minors, the district court ordered Nelson to pay child support. Nelson stopped making child-support payments sometime in 1997. Since then, Olmsted County and Nelson's ex-wife have repeatedly attempted to recover child support from Nelson, whom the court has held in civil contempt on multiple occasions due to his refusal to pay child support. As of April 2008, Nelson owed $83,470.27 in child support.

The State charged Nelson by complaint in August 2008 with felony-level failure to provide care and support to his children for more than 180 days, a violation of Minn.Stat. § 609.375, subds. 1, 2a(1). The complaint alleged that, "[b]eginning before April 12, 2007 and continuing through April 30, 2008 ... Nelson was legally obligated to provide care and support to his minor children, and knowingly omitted and failed [to do so] without lawful excuse." During the period covered by the com-

plaint, Nelson was obligated to pay a total of $378 per month, which included his child-support obligation and a payment to defray his arrears. During that period, however, Nelson made only one involuntary payment of $41.10.

Before trial, Nelson moved to dismiss the complaint for lack of probable cause. Nelson argued that the absence of any facts in the complaint alleging that he had omitted and failed to provide *both* care *and* support to his children required dismissal of the complaint. The State opposed Nelson's motion, arguing that a person violates the care-and-support statute if he or she omits and fails to provide *either* care *or* support (or both) to a spouse or child. The district court agreed with the State and denied Nelson's motion.

The State then filed a motion in limine to prohibit Nelson from "making any claim, eliciting or attempting to elicit testimony, or making [any] argument concerning the defendant's alleged non-monetary care of [his] children as a defense to the current action." The district court granted the State's motion. In response, Nelson waived his right to a jury trial and agreed to a trial on stipulated facts to expedite review of the court's pretrial rulings. *See* Minn. R.Crim. P. 26.01, subd. 4. Following a bench trial on stipulated facts, the court found:

1. That beginning before April 12, 2007 and continuing through April 30, 2008, Mr. Nelson was legally obligated to provide care and support to his minor children.

2. That during said time frame, Mr. Nelson knowingly omitted and failed without lawful excuse to pay $315 per month as he had been ordered to do by District Court Order dated September 27, 2006.

3. That said failure to pay child support continued for a period in excess of one hundred and eighty (180) days, and Mr. Nelson is in arrears in Court–Ordered child support in an amount equal to or greater than nine (9) times his total monthly support obligation.

4. That Mr. Nelson's nonsupport of his children occurred in Olmsted County, Minnesota.

Based on those facts, the court convicted Nelson of a felony violation of the care-and-support statute.[1] The court stayed imposition of Nelson's sentence and placed him on supervised probation for 2 years.

The court of appeals affirmed Nelson's conviction. *State v. Nelson,* 823 N.W.2d 908 (Minn.App.2012). The court concluded that the phrase "care and support" in Minn.Stat. § 609.375, subd. 1, "refers exclusively to a person's financial obligations to a spouse or child." *Nelson,* 823 N.W.2d at 912. The court of appeals also concluded that the district court did not abuse its discretion when it excluded Nelson's evidence that he had provided nonmonetary care to his children. *Id.* at 913. We granted Nelson's petition for further review.

## II.

The question presented by this case is whether Nelson's omission and failure to pay court-ordered child support is sufficient, standing alone, to support his conviction of knowingly omitting and failing "to provide care and support" for his children. *See* Minn.Stat. § 609.375, subd. 1. Whether Nelson's conduct violated the care-and-support statute presents a question of statutory interpretation that we review de novo. *See State v. Hayes,* 826 N.W.2d 799, 803 (Minn.2013). When interpreting a statute, "we give words and phrases their plain and ordinary meaning." *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn.2010) (citing Minn. Stat. § 645.08 (2012)). If a statute has more than one reasonable interpretation, then it is ambiguous and we may resort to the canons of statutory construction to determine its meaning. *See Hayes,* 826 N.W.2d at 804. On the other hand, if a statute is susceptible to only one reasonable interpretation, "then we must apply the statute's plain meaning." *Larson v. State,* 790 N.W.2d 700, 703 (Minn.2010).

### A.

We begin our analysis with the text of the care-and-support statute, Minn.Stat. § 609.375, which states in relevant part as follows:

> Subdivision 1. **Crime defined.** Whoever is legally obligated to provide care and support to a spouse or child, whether or not the child's custody has been granted to another, and knowingly omits and fails to do so is guilty of a misdemeanor....

Minn.Stat. § 609.375, subd. 1. Both parties agree that the phrase "care and support" describes two independent legal obligations. The parties disagree, however, about whether the care-and-support statute requires the State to prove a knowing omission and failure to provide *both* care *and* support or only a knowing omission and failure to provide *either* care *or* support.

Nelson would define the term "care" as nonmonetary assistance and the term "support" as monetary assistance. The State does not advance an alternative defi-

---

1. The State charged Nelson with a felony violation of the care-and-support statute under subdivision 2a(1) because the alleged violation "continue[d] for a period in excess of 180 days." Minn.Stat. § 609.375, subd. 2a(1).

nition of either term, relying instead on its argument that it must prove only the omission and failure to provide one or the other to obtain a conviction under the care-and-support statute. Because the care-and-support statute does not define either term, we give each term its plain and ordinary meaning. *See Abrahamson v. St. Louis Cnty. Sch. Dist.*, 819 N.W.2d 129, 133 (Minn.2012) (citing Minn.Stat. § 645.08(1) (2012)).

■ The term "care" means "[w]atchful oversight; charge or supervision ... [or] [a]ttentive assistance or treatment to those in need." *The American Heritage Dictionary of the English Language* 281 (5th ed.2011); *see also Webster's Third New International Dictionary* 338 (1976) (defining "care" as "responsibility for or attention to safety and well-being"); *Black's Law Dictionary* 225 (8th ed.2004) (defining "care" in family-law context as "[t]he provision of physical or psychological comfort to another, esp. an ailing spouse, child, or parent").[2] The plain and ordinary meaning of the term "care" mirrors the types of nonmonetary legal obligations that a court can impose on a parent, including court-ordered parenting time, custody, and visitation. *See, e.g.*, Minn.Stat. § 518.003, subd. 3(f) (2012) (defining custody determination to mean "court orders and instructions providing for the custody of a child, including parenting time"). For example, courts frequently make determinations regarding the physical or joint physical custody of a child that establish "the routine daily *care* and control and the residence of the child." *Id.*, subd. 3(c), (d) (2012) (emphasis added); *see also* Minn.Stat. § 518.1751, subd. 1b(b) (2012) (defining a "a parenting time dispute" to include "a claim by a parent that the other parent is not spending time with a child"). Even parents who are not subject to a specific court order to provide care to their chil-

2. Justice Dietzen's dissent criticizes us for relying on what it calls "an uncommon dictionary definition of the word 'care.'" The dissent accurately points out that the most-common meaning of "care" is "[a] concerned or troubled state of mind, as that arising from serious responsibility; worry." *The American Heritage Dictionary of the English Language* 281 (5th ed.2011). According to the dissent, our failure to use the most common definition—a definition that makes no sense in the context of the care-and-support statute—somehow undermines our interpretation of the statute.

The dissent's criticism is flawed because it overlooks the basic principle that the relevant definition of a term depends on the context in which the term is used. *See Deal v. United States*, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (calling it a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"); *see also Carcieri v. Salazar*, 555 U.S. 379, 391, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009) (concluding that all but one definition of the term "now" was eliminated by the context in which the term was used in a statute). An everyday example illustrates the point. The most common definition of the term "foot" in the dictionary is "[t]he lower extremity of the vertebrate leg that is in direct contact with the ground in standing or walking." *The American Heritage Dictionary of the English Language* 683 (5th ed.2011). Much less commonly, "foot" means "[a] unit of poetic meter consisting of stressed and unstressed syllables in any of various set combinations." *Id.* In the context of a discussion of the metrical properties of lyric poetry, no one would conclude that the discussion is referring to someone's limb, even if the dictionary lists the "poetic meter" meaning as the eighth most common definition of the term "foot."

Similarly, in the context of the care-and-support statute, the term "care" means "[w]atchful oversight; charge or supervision ... [or][a]ttentive assistance or treatment to those in need." *Id.* at 281. Indeed, the example attached to the first half of this definition of the term "care" is *"left the child in a neighbor's care,"* which is consistent with the context in which the term is used in the care-and-support statute. *Id.* at.

dren have a legal obligation to supervise and attend to their children. *See, e.g.,* Minn.Stat. § 609.378 (2012) (criminalizing neglect of a child). The term "care" in the care-and-support statute, therefore, reasonably refers to those nonmonetary legal obligations that require watchful oversight, attentive assistance, or supervision of a spouse or child.

■ In contrast, the term "support" means "[t]he provision of money or the necessities of life: *child support.*" *The American Heritage Dictionary of the English Language* 1751 (5th ed.2011); *see also Webster's Third New International Dictionary* 2297 (1976) (defining "support" as "a means of livelihood, sustenance, or existence"); *Black's Law Dictionary* 1480–81 (8th ed.2004) (defining "support" in part as "[o]ne or more monetary payments to a current or former family member for the purpose of helping the recipient maintain an acceptable standard of living"). Like the term "care," the term "support" has a plain and ordinary meaning that is consistent with the types of legal obligations that arise under Minnesota law. The most familiar example is court-ordered child support, which "includes the dollar amount ordered for a child's housing, food, clothing, transportation, and education costs, and other expenses relating to the child's care." Minn.Stat. § A.26, subd. 4 (2012). *Cf.* Minn.Stat. § C.101(u) (2012) (defining "support order" in part to mean an "order . . . for the benefit of a child, spouse, or former spouse, which provides for monetary support, health care, arrearages, or reimbursement"). In the context of the care-and-support statute, therefore, the term "support" reasonably refers to a legal obligation to provide monetary assistance or other material necessities to a spouse or child.

Justice Dietzen's dissent adopts a different approach to the care-and-support statute. Rather than ascribing independent meaning to the terms "care" and "support," he would conclude that "care and support" is a term of art or a legal doublet that refers exclusively to "a person's obligation to pay court-ordered child or spousal support." Thus, for slightly different reasons, Justice Dietzen reaches the same conclusion as the court of appeals, which held that the phrase "care and support" refers exclusively to "a person's financial obligations" to a spouse or child. *Nelson,* 823 N.W.2d at 912.

While Justice Dietzen's interpretation of the care-and-support statute is reasonable, it suffers from several flaws, the most serious of which is that it renders the term "care" superfluous in the statute. Under our interpretation and that adopted by Justice Lillehaug, the term "support," standing alone, refers to the obligation to provide monetary assistance or other material necessities. Thus, Justice Dietzen's interpretation, which ascribes the same meaning to the phrase "care and support," necessarily means that the word "care" does no work at all in his interpretation, which violates the canon against surplusage in the interpretation of a statute.[3] *See*

---

**3.** In his dissent, Justice Lillehaug focuses on the meaning of the word "support" and leaves open the question of what the word "care" means in the care-and-support statute. Yet Justice Lillehaug's approach is in some tension with Justice Dietzen's assertion that the phrase "care and support" is a term of art that refers solely to "support" and has carried such a meaning for approximately 90 years.

It is odd to imply, as the dissents collectively do, that the word "support" alone refers to a monetary obligation and that the phrase "care and support" means the same thing. In any event, the fact that Justice Lillehaug and Justice Dietzen do not entirely agree on how to read the care-and-support statute reinforces our conclusion that the statute is ambiguous and that the rule of lenity applies.

*Baker v. Ploetz,* 616 N.W.2d 263, 269 (Minn.2000) (describing the canon).

■ Justice Dietzen provides two explanations for why the canon against surplusage does not apply in the context of the care-and-support statute, but neither is persuasive. Justice Dietzen's first explanation is that the phrase "care and support" is a legal term of art that refers exclusively to financial support. In a vacuum and without reference to the care-and-support statute, Justice Dietzen's explanation has merit. But in the context of the care-and-support statute itself, it falls apart. If "care and support" were a legal term of art, as Justice Dietzen asserts, then the Legislature would have used that phrase consistently to refer to a person's financial obligations to a spouse or child. Yet the phrase "care and support" appears only in subdivisions 1 and 8 of section 609.375. Other subdivisions of the care-and-support statute variously use phrases such as "child support or maintenance payments," Minn.Stat. § .375, subds. 2(2) & 2a(2); "monthly support and maintenance payments," *id.,* subds.(2) & 2a(2); "support or maintenance," *id.,* subd.b; "child support," *id.,* subd.; or simply "support," *id.,* subd. 5, to refer to a person's financial obligations to a spouse or child. Generally, "when different words are used in the same context, we assume that the words have different meanings." *Dereje v. State,* 837 N.W.2d 714, 720 (Minn.2013); *see also Transp. Leasing Corp. v. State,* 294 Minn. 134, 137, 199 N.W.2d 817, 819 (1972) ("Distinctions of language in the same context must be presumed intentional and must be applied consistent with that intent.").

Thus, at best, Justice Dietzen's term-of-art explanation only identifies an additional ambiguity in the care-and-support statute based on the varying phrases used by the Legislature to refer to a person's financial obligations to a spouse or child.

Justice Dietzen alternatively explains that "care and support" is a legal doublet, meaning that the canon against surplusage is inapplicable. However, like the term-of-art explanation, the legal-doublet explanation does not withstand scrutiny. Specifically, the legal-doublet explanation begs the underlying question of whether the term "care" in the care-and-support statute is meaningless. But we can only declare a phrase to be a legal doublet once we have determined that a word within that phrase is meaningless. *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 294–97 (3d ed.2011) (entry for "Doublets, Triplets, and Synonym–Strings"). That determination, in turn, depends on whether the canon against surplusage applies in the context of a particular statute. Justice Dietzen flips the relevant analysis on its head by first declaring that "care and support" is a legal doublet and then determining, through largely conclusory reasoning, that the canon against surplusage does not apply.[4] Merely declaring that something is a legal doublet, however, does not make it one. That is especially true when the authority relied upon by Justice Dietzen, *The Redbook: A Manual on Legal Style,* does not identify the phrase "care and support" in a list of over 100 common legal doublets. Bryan A. Garner, *The Redbook: A Manual on Legal Style* § .2(f) (2d ed.). Nor does any other

---

4. The case cited in Justice Dietzen's dissent, *Freeman v. Quicken Loans, Inc.,* —— U.S. ——, 132 S.Ct. 2034, 182 L.Ed.2d 955 (2012), is not to the contrary. *Freeman* did not hold that the canon against surplusage should be set aside when a statute contains a legal doublet. Rather, consistent with our analysis,

*Freeman* rejected a party's appeal to the canon against surplusage because "the canon against surplusage merely favors that interpretation which *avoids* surplusage," and the party's proposed interpretation did not actually avoid surplusage. *Id.* at ——, 132 S.Ct. at 2043.

source, to our knowledge, list "care and support" as a legal doublet. *See, e.g.,* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 295–96 (3d ed.2011). Instead, declaring that "care and support" is a legal doublet is just a technical manner of concluding that the word "care" is meaningless, which adds little to the analysis of the care-and-support statute.

## B.

Having established that "care" and "support" may refer to different obligations, we now turn to the heart of the parties' dispute in the case: whether the care-and-support statute requires the State to prove a knowing omission and failure to provide *both* care *and* support or a knowing omission and failure to provide *either* care *or* support. The care-and-support statute uses "and," rather than "or," in identifying the affirmative duties of "care" and "support." While the term "and" ordinarily has a conjunctive meaning, *see Lennartson v. Anoka–Hennepin Indep. Sch. Dist. No. 11*, 662 N.W.2d 125, 130 (Minn.2003), the care-and-support statute is unusual because it uses a conjunctive term in the context of a negative command. More specifically, the care-and-support statute criminalizes an omission because a violation occurs only when a person "knowingly omits and fails" to provide "care and support." Minn.Stat. § .375, subd.1. The unusual wording leads us to conclude that there are two reasonable interpretations of what constitutes an omission and failure to provide "care *and* support" under the care-and-support statute.

Setting aside the statute's *mens rea* requirement for a moment, the phrase "to omit and fail to provide care and support" is equivalent to the phrase "to not provide care and support." When a coordinated phrase such as "provide care and support"

is negated, two interpretations are possible. Rodney Huddleston and Geoffrey K. Pullum, *The Cambridge Grammar of the English Language* 1298 (2002) ("*Cambridge Grammar*"). An everyday example will illustrate the point. When a person states, "I am not free on Saturday and Sunday," we often interpret the statement as "I am not free on Saturday and I am not free on Sunday." *Id.* at 1299. Yet a second, "less salient reading" is also possible by interpreting the statement as "I am not free on both days," allowing for the possibility that the person making the statement is free on one of the two days. *Id.*

The State urges us to adopt the equivalent of the latter interpretation in the context of the care-and-support statute. According to the State, people who are legally obligated to do two acts (e.g., to provide care and support) fail to fulfill their obligation to do both if they fail to do one or the other. The State's argument is, in effect, an application of De-Morgan's Theorem—a principle used in formal logic. DeMorgan's Theorem posits that the negative of a conjunctive phrase (i.e., not (A and B)) is equivalent to the disjunction of the negated terms (i.e., (not A) or (not B)), and the negative of a disjunctive phrase (i.e., not (A or B)) is equivalent to the conjunction of the negated terms (i.e., (not A) and (not B)). *See Websters Third New International Dictionary* 600 (1976) (defining DeMorgan's Theorem as a pair of logical theorems meaning that "the denial of a conjunction is equivalent to the alternation of the denials and the denial of an alternation is equivalent to the conjunction of the denials"); *see also United States v. One 1973 Rolls Royce*, 43 F.3d 794, 815 n. 19 (3d Cir.1994) (discussing DeMorgan's Theorem). Put differently, as a matter of formal logic, the phrase "failure to do A and B" is equivalent to the phrase "failure to

do A or failure to do B." Applying De-Morgan's Theorem to the care-and-support statute, the statute's prohibition on the knowing omission and failure to provide care and support is equivalent to a prohibition on *either* the knowing omission and failure to provide care *or* the knowing omission and failure to provide support. As a matter of logic and grammar, the State's interpretation of the care-and-support statute is reasonable.

Nelson also advances a reasonable interpretation of the care-and-support statute. Under Nelson's interpretation, "to omit and fail to provide care and support" means "to omit and fail to provide care *and* to omit and fail to provide support." Indeed, in common usage, Nelson's reading of the care-and-support statute is the more natural interpretation. *Cambridge Grammar* 1299. Furthermore, Nelson's interpretation is consistent with *Farnam v. Linden Hills Congregational Church*, 276 Minn. 84, 93, 149 N.W.2d 689, 696 (1967), in which we recognized that "the conjunctive 'and' ... requires concurrence of both grounds ... and, had only one ground been intended to be required, the disjunctive 'or' would have been used." Similarly, the use of the word "and" in the care-and-support statute may reasonably require the concurrence of both a knowing omission and failure to provide "care" and a knowing omission and failure to provide "support" to constitute a violation.

The State argues that Nelson's interpretation is absurd because it would allow a defendant to avoid criminal liability by, for example, "picking a child up from school once." We disagree for two reasons. First, the State's example would not absolve a parent of criminal liability under the care-and-support statute. The fact that a person has provided *some* care does not mean that the person has fulfilled his or her *legal* obligation to provide "care."

Indeed, just as a parent can violate a duty to provide support by failing to pay the full amount of child support due each month, so too can a parent violate a duty to provide care by failing to fulfill a parenting-time or visitation obligation when that obligation is required by law (as, for example, when a court-ordered parenting-time arrangement is designed to enable one parent to work while the other takes care of a child).

Second, it is not absurd for the Legislature to criminalize the conduct of only profoundly delinquent parents—those who are charged with, and ignore, multiple obligations, both monetary and nonmonetary, to their dependents. *See Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 827 (Minn. 2005) (indicating that a statute is absurd "only in rare cases where the plain meaning 'utterly confounds a clear legislative purpose'" (quoting *Mutual Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust*, 659 N.W.2d 755, 761 (Minn.2003))). As the State concedes, criminal penalties are not the only means to enforce child-support orders; courts have other powers to secure compliance with such orders, including the power to hold a non-complying parent in civil contempt. Therefore, Nelson's interpretation of the care-and-support statute, which would impose criminal penalties for only egregious instances of parental neglect, is also reasonable.

Justice Lillehaug's dissent would adopt the "less salient reading" of the care-and-support statute, which requires the State to prove a knowing omission or failure to provide *either* care *or* support, but not necessarily both, to convict a person of a violation of the statute. Justice Lillehaug appears to support his interpretation by application of the canon of *in pari materia*, which "'allows two statutes with common purposes and subject matter to be construed together to determine the mean-

ing of ambiguous statutory language.' " *State v. Leathers,* 799 N.W.2d 606, 611 (Minn.2011) (quoting *State v. Lucas,* 589 N.W.2d 91, 94 (Minn.1999)); *Eischen Cabinet Co. v. Hildebrandt,* 683 N.W.2d 813, 816 n. 3 (Minn.2004) (describing the canon of *in pari materia* ). In Justice Lillehaug's view, other portions of section 609.375 and additional, related statutes ostensibly conflict with Nelson's interpretation of the care-and-support statute. We disagree.

Far from supporting Justice Lillehaug's interpretation of the care-and-support statute, these additional provisions provide further evidence that the care-and-support statute is ambiguous. Justice Lillehaug first relies on a number of other subdivisions of Minn.Stat. § 609.375, as well as Minn.Stat. § 609.3751 (2012), which refer to only "support," "support or maintenance," or "child support or maintenance," without reference to the corresponding obligation to provide "care." Justice Lillehaug, however, overlooks Minn.Stat. § 609.375, subd. 8, which provides an affirmative defense "if the defendant proves by a preponderance of the evidence that the omission and failure *to provide care and support* were with lawful excuse." Minn. Stat. § 609.375, subd. 8 (emphasis added). As we note above, the use of varying phrases in Minn.Stat. § 609.375 to describe the obligations imposed by the statute means that it is reasonable to assume that the phrase "care and support" has a different meaning than "child support or maintenance payments," "monthly support and maintenance payments," "support or maintenance," and "child support." *See, e.g., Transp. Leasing Corp.,* 294 Minn. at 137, 199 N.W.2d at 819 ("Distinctions of language in the same context must be presumed intentional and must be applied consistent with that intent."). The resulting statutory scheme—in which the State must establish two elements to prove a crime, but only an increase in the severity of one of the elements to aggravate the crime—is consistent with other crimes defined by the Legislature, and it also gives meaning to every word and phrase in Minn.Stat. § 609.375. *See, e.g., Hayes,* 826 N.W.2d at 805 (interpreting a provision of the drive-by-shooting statute as creating a sentence enhancement rather than a separate, aggravated definition of the crime of drive-by shooting).

Justice Lillehaug's interpretation also is in tension with another provision in Minn. Stat. § 609.375. Subdivision 2b, which is not directly at issue here, states that a person "may not be charged with violating this section unless there has been an attempt to obtain a court order holding the person in contempt for failing to pay support or maintenance." Minn.Stat. § 609.375, subd. 2b. Under one articulation of Justice Lillehaug's interpretation of the care-and-support statute, the failure to provide care alone is defined as a crime. The State, however, can never prosecute that crime in light of subdivision 2b because a person who fails to provide "care" to a spouse or child, but meets his or her financial obligations, cannot be subject to a contempt order for "failing to pay support or maintenance." Consequently, Justice Lillehaug's interpretation of the care-and-support statute, like those of Justice Dietzen and the court of appeals, renders the term "care" meaningless, which violates the canon requiring us to give meaning to every word and phrase in a statute. *Baker,* 616 N.W.2d at 269 (describing the canon).

Similarly, Justice Lillehaug's attempt to read Minn.Stat. § 609.375, subd. 1, *in pari materia* with Minn.Stat. § 518.68 (2012) does not resolve the ambiguity in either statute. Section 518.68, subdivision, requires a court to · provide the following notice when it enters a support order:

A person who fails to pay court-ordered child support or maintenance *may* be charged with a crime, which *may* include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375.

(Emphasis added.) The statutory notice twice uses the term "may," once to describe the possibility of criminal charges for nonpayment of support and again to describe the potential classification of any charges brought against a delinquent obligor.

For that reason, the notice provision is itself susceptible to *at least* two reasonable interpretations. The first is the interpretation adopted by Justice Lillehaug's dissent: the notice makes it clear that nonpayment of support alone can establish a violation of Minn.Stat. § 609.375. But again, a second reasonable interpretation also exists: the notice indicates that nonpayment of support is required to prove a violation of Minn.Stat. § 609.375, but the State also must prove the other elements of the statute, including the knowing omission and failure to provide care. Thus, application of the canon of *in pari materia* also leads to the conclusion that the care-and-support statute is ambiguous.

### C.

■ Because Minn.Stat. § .375, subd.1, is subject to at least three reasonable in-

terpretations, it is ambiguous. *See Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870–71 (Minn.2006). When a statute is ambiguous, we may consider the canons of statutory construction to ascertain its meaning. *See Hayes*, 826 N.W.2d at 804. In some circumstances, resort to the canons of statutory construction is unnecessary because one of the reasonable interpretations of a statute is most persuasive. *See id.* at 805 (embracing the more reasonable of the two interpretations of a statute); *In re Estate of Butler*, 803 N.W.2d 393, 397 (Minn.2011) (adopting the "better interpretation" of a statute).

■ In this case, however, none of the reasonable interpretations is most persuasive. We therefore look to the rule of lenity, which applies to the interpretation of criminal statutes when "a grievous ambiguity or uncertainty in the statute" remains after we have considered other canons of statutory construction. *Dean v. United States*, 556 U.S. 568, 577, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009) (citation omitted) (internal quotation marks omitted); *see also United States v. Hayes*, 555 U.S. 415, 429, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (stating that the rule of lenity applies when a statute is still ambiguous after applying the other canons of statutory construction). We face that situation here.[5]

---

5. Justice Lillehaug's dissent describes our application of the rule of lenity as "knee-jerk," but our holding today derives from a common-sense recognition that the care-and-support statute fails to provide "fair warning of the boundaries of criminal conduct." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). As we demonstrate above, the care-and-support statute is subject to at least three reasonable interpretations, the canon of *in pari materia* reinforces the ambiguity of the statute, and application of the *Farnam* rule could lead a reasonable reader to adopt Nelson's interpretation of the statute. *See Leathers*, 799 N.W.2d at 611 (applying the rule of lenity in similar circumstances to conclude that the phrase "full term of imprisonment" means two-thirds of a defendant's executed sentence); *State v. Stevenson*, 656 N.W.2d 235, 239 (Minn.2003) (adopting the narrower of two reasonable interpretations of a statute using the rule of lenity); *State v. Haas*, 280 Minn. 197, 200, 159 N.W.2d 118, 121 (1968) (applying, among other things, the rule of lenity in concluding that "even though the offense charged might fall within the apparent policy of the statute, it was not intended to be included."). To the extent that the

The rule of lenity requires us to resolve the ambiguity in the care-and-support statute in favor of the criminal defendant. *See United States v. Santos,* 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008); *Leathers,* 799 N.W.2d at 611. The rule of lenity "vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." *Santos,* 553 U.S. at 514, 128 S.Ct. 2020. Here, the rule of lenity dictates that we adopt Nelson's interpretation, which will always favor criminal defendants whom the State prosecutes under the care-and-support statute. *See id.* (adopting the more "defendant-friendly" of two reasonable interpretations of a criminal statute). Accordingly, we conclude that, to obtain a conviction under Minn.Stat. § 609.375, subd. 1, the State must prove beyond a reasonable doubt that the defendant knowingly omitted and failed to provide both care and support to a spouse or child.

In this case, the State presented insufficient evidence to support Nelson's conviction under the care-and-support statute. The State concedes that it did not present any evidence at trial that Nelson knowingly omitted and failed to provide care to his children, and a review of the record confirms the accuracy of the State's concession. We therefore reverse Nelson's conviction.

### III.

For the foregoing reasons, we reverse the decision of the court of appeals.[6]

Reversed.

Legislature wishes to criminalize the failure to pay support alone, separate from the failure to provide care, nothing prevents the Legislature from amending section 609.375 to eliminate the ambiguity in the care-and-support statute.

DIETZEN, Justice (dissenting).

I agree with Justice Lillehaug's analysis, but would affirm for different reasons, and therefore write separately. In my view, our longstanding use of the phrase "care and support" to describe a person's financial obligations to a child or spouse has given the phrase a special or technical meaning. Thus, in accordance with Minn. Stat. § 645.08 (2012), I conclude that the phrase "care and support," as used in Minn.Stat. § 609.375 (2012), unambiguously refers to a person's obligation to pay court-ordered child or spousal support. Because Nelson knowingly omitted and failed to pay court-ordered child support, I would affirm his conviction.

In reversing Nelson's conviction, the majority ignores our longstanding use of the phrase "care and support," fails to acknowledge that the presumption against surplusage does not apply to doublets (two ways of saying the same thing that reinforce its meaning), and ascribes the least common dictionary definition to the word "care" to artificially create separate obligations to provide "care" and "support." The result is an interpretation of the statutory language that is strained, illogical, and contrary to our use of the phrase "care and support" over the last 90 years. My analysis follows.

### I.

Nelson was convicted of a violation of Minn.Stat. § 609.375, subd. 1, which provides in relevant part: "Whoever is legally obligated to provide care and support to a

6. In light of our decision in this case, we need not, and do not, address the question of whether the district court abused its discretion when it excluded Nelson's evidence of nonmonetary care to his children.

spouse or child ... and knowingly omits and fails to do so is guilty of a misdemeanor." Nelson concedes that he was legally obligated to pay court-ordered child support and that he knowingly failed to do so. Nevertheless, he contends that the word "care" in the statutory phrase "care and support" has a separate, independent meaning in the statute beyond the financial obligation to pay court-ordered child or spousal support. More specifically, he contends that the word "care" creates a legal obligation to provide psychological support and a nurturing environment. Based on that contention, Nelson argues that the State presented insufficient evidence to support his conviction because there is no evidence that he failed to provide non-monetary care to his children.

Whether Nelson paid court-ordered support is not an issue in this case. He did not. Instead, the issue is whether the word "care" in the phrase "care and support" has a separate, independent meaning in the statute other than financial support. I begin my analysis by explaining my view of the plain and unambiguous language of section 609.375. Thereafter, I will discuss my concerns regarding the majority's strained and illogical interpretation of the statute.

Statutory interpretation is a question of law subject to de novo review. *State v. Rick*, 835 N.W.2d 478, 482 (Minn.2013). The goal of all statutory interpretation is to ascertain and effectuate the Legislature's intent. *Id.* To aid us in that process, the Legislature enacted Minn.Stat. § 645.08, which directs that "[i]n construing the statutes of this state, [certain] canons of interpretation *are to govern*, unless their observance would involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute." *Laase v.2007 Chevrolet Tahoe*, 776 N.W.2d 431, 435 (Minn.2009) (alteration in original) (quoting Minn.Stat. § 645.08). We use the "canons of interpretation" set forth in section 645.08 to determine the threshold issue of whether the statutory language is unambiguous. *Id.*(explaining that a finding of ambiguity is not required before an application of the canons of interpretation); *see also* William N. Eskridge, Jr. & Philip P. Frickey, *Forward: Law as Equilibrium*, 108 Harv. L.Rev. 26, 97 (1994) (distinguishing "textual canons" that govern "grammar and syntax, linguistic inferences, and textual integrity" to interpret plain meaning from "extrinsic source canons" and "substantive policy canons"). In accordance with the canons of interpretation, we construe technical words according to their technical meaning and other words according to their common and approved usage and the rules of grammar. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn.2012); *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996). A phrase acquires a technical meaning when courts have ascribed a well-established and long-accepted meaning to the phrase. *In re Stisser Grantor Trust*, 818 N.W.2d 495, 504 (Minn.2012) (explaining that the phrase "pay ... my legal debts" was a technical phrase that had a definite and well-established meaning in Minnesota based on our prior jurisprudence); *Staab*, 813 N.W.2d at 75 (explaining that the phrase "joint and several liability" had acquired a special meaning at common law). Whether a phrase should be ascribed its technical or special meaning depends in part upon the context in which the phrase appears. *Rick*, 835 N.W.2d at 484.

Keeping these principles in mind, I begin my analysis by considering whether Minnesota courts have ascribed a well-established meaning to the phrase "care and support." For over 90 years, we have consistently used the phrase "care

and support" to describe a person's financial obligations to a child or spouse. In *State v. Wiebke,* we considered the effect of a statutory amendment that allowed a court to "fix the amount, and order the defendant to pay all expenses necessarily incurred by, or in behalf of, the mother of [a child born out of wedlock] in connection with ... the care and maintenance of the child *prior* to [a paternity] judgment." 154 Minn. 61, 67, 191 N.W. 249, 251 (1922) (emphasis added) (citation omitted) (internal quotation marks omitted). We concluded that the amendment created an expanded remedy, rather than a new liability, because the preexisting statute reflected a defendant's responsibility for the child's "support from birth." *Id.* at 68, 191 N.W. at 251. In describing the defendant's financial support obligation, we repeatedly used the phrase "care and support of the child." *Id.* at 67–68, 191 N.W. at 251.

In *Morrissey v. Morrissey,* we considered whether the district court erred when it ordered the defendant to pay the sum of $250 a month "as alimony, for the support, care and maintenance of plaintiff and the children." 172 Minn. 72, 74, 214 N.W. 783, 784 (1927). We ultimately held that the district court's order should have indicated "what amount of the monthly payment of $250 is for the *care and support* of the children." *Id.* at 75, 214 N.W. at 784 (emphasis added). Like our analysis in *Wiebke,* our holding in *Morrissey* used the phrase "care and support" to describe the defendant's financial obligation to his children.

In *Austin v. Rosecke,* we considered whether the district court erred when it entered a judgment against a father for child support payments that were past due. 240 Minn. 321, 322, 61 N.W.2d 240, 242 (1953). The initial child support judgment required the father to pay $10 per week to the mother "for the care and support" of the parties' two minor children. *Id.* at 322, 61 N.W.2d at 242. We did not distinguish between the husband's obligation to pay for the wife's care of the children *and* the wife's financial support of the children. Instead, we used the phrase "care and support" to refer to the husband's sole obligation to provide *financial support* to the former wife who had custody of the children.

In a later child support case, we considered whether the district court erred when it entered judgment against the plaintiff father for $2,400 in accrued child support payments. *Smith v. Smith,* 282 Minn. 190, 196, 163 N.W.2d 852, 857 (1968). We reversed in part and remanded, holding that the father was absolved from making the monthly child support payments because the mother had violated the divorce decree by moving with their two children to Cairo, Egypt, without the father's consent. *Id.* at 195, 163 N.W.2d at 857. In reaching this conclusion, we acknowledged that the father had three other children in his custody, and there was no evidence indicating what effect a lump-sum payment would have on the father's "ability to provide care and support" for his custodial children. *Id.* at 196, 163 N.W.2d at 857. Put another way, if the father was forced to pay $2,400 to his former wife for the financial support of their two children, he might not be able to *financially support* his three custodial children.

*Wiebke, Morrissey, Austin,* and *Smith* are just four examples of the many cases where we have used the phrase "care and support" to refer to the sole obligation to provide financial support. *See also In re Martinson,* 287 Minn. 213, 215, 177 N.W.2d 808, 809 (1970) (stating that the mother had made "no financial contributions for the care and support of said child when she was employed"); *Cnty. of Goo-*

*dhue v. Rice Cnty.*, 281 Minn. 124, 125, 160 N.W.2d 657, 658 (1968) (noting that "the care and support of the children ha[d] been paid from public funds"); *Long v. Campion*, 250 Minn. 196, 202, 84 N.W.2d 686, 691 (1957) (discussing whether the proceeds of bonds were needed for the "care and support" of the ward); *In re Maloney's Guardianship*, 234 Minn. 1, 6, 48 N.W.2d 313, 315 (1951) (stating that the Catholic Welfare Association had "expended approximately $1,300 for the care and support of the children from the time it had received the guardianship"); *In re Underwood*, 231 Minn. 144, 147, 42 N.W.2d 416, 418 (1950) (quoting the district court's finding that the child was wholly dependent upon her father "for financial care and support"). Based on our well-established use of the phrase "care and support" to describe a person's financial obligations to a child or spouse, I conclude that the phrase has acquired a technical meaning.

In determining whether this technical or special meaning should be ascribed to the phrase "care and support" as used in Minn.Stat. § 609.375, subd. 1, I consider the context in which the phrase appears in the statute. The full text of subdivision 1 reads:

> Whoever is legally obligated to provide care and support to a spouse or child, whether or not the child's custody has been granted to another, and knowingly omits and fails to do so is guilty of a misdemeanor, and upon conviction may be sentenced to imprisonment for not more than 90 days or to payment of a fine of not more than $1,000, or both.

Minn.Stat. § 609.375, subd. 1. If the phrase "care and support" is ascribed its technical meaning (a person's financial obligations to a child or spouse), it resonates with the surrounding statutory language including the phrase "to a spouse or child" because it is commonly accepted that a person may be legally obligated to financially support a child or estranged spouse. Moreover, the phrase "to a spouse or child" in section 609.375 renders unreasonable any interpretation of the phrase "care and support" that creates a legal obligation to provide psychological support and a nurturing environment to one's estranged spouse. In light of the context in which the phrase "care and support" appears in the statute, I conclude that the phrase should be ascribed its well-established technical meaning—a person's obligation to provide financial support. Accordingly, I would hold that the State's evidence that Nelson knowingly omitted and failed to pay court-ordered child support was sufficient to support his conviction under Minn. Stat. § 609.375, subd. 1.

II.

I next discuss my concerns with the majority's interpretation of Minn.Stat. § 609.375, subd. 1. The majority interprets the phrase "care and support" to create two separate legal obligations. The first obligation requires a person to provide "care," which according to the majority includes watchful oversight, attentive assistance, or supervision of a spouse or child. The second obligation requires a person to provide "support," which includes financial payments. The majority argues that its interpretation is supported by the presumption against surplusage, Minn.Stat. § 645.16 (2012) (providing that "[e]very law shall be construed, if possible, to give effect to all its provisions"), and the plain and ordinary meaning of the word "care." For the reasons discussed below, I conclude that the majority's interpretation is strained, illogical, and contrary to our use of the phrase "care and support" over the last 90 years.

When the court interprets the phrase "care and support" in section 609.375, sub-

division 1, we are not writing on a clean slate. For over 90 years we have consistently used the phrase "care and support" to mean a person's obligation to provide financial support. The majority counters that the phrases "care and support," "child support or maintenance payments," "monthly support and maintenance payments," "support and maintenance," "child support" and "support" must all be given different meanings. The majority's argument is unpersuasive for two reasons. First, the majority's argument that the use of different words in the same context will always have different meanings is illogical in this context. For example, no one could argue that if the phrase "support and maintenance" refers to financial support that the phrase "child support or maintenance payments," or "monthly support and maintenance payments" must be interpreted to have a different meaning. Despite the varied language used by the Legislature, the phrases "child support or maintenance payments," "monthly support and maintenance payments," "support and maintenance," "child support" and "support" all refer to financial support. Yet, the majority inexplicably contends that the Legislature's use of varied language in the phrase "care and support" compels a conclusion that the phrase refers to something more than financial support.

Perhaps more importantly, the majority has not identified any instance in which the Legislature has used the phrase "care and support" in a manner that is inconsistent with the longstanding use of the phrase. The fact that the Legislature has used a number of phrases to describe a person's obligation to provide financial support does not make any one of those phrases "ambiguous." Instead, a phrase is ambiguous only when the phrase is subject to more than one reasonable interpretation. Just as the Legislature's use of the phrase "care and support" does not make the phrase "child support" ambiguous, the Legislature's use of the phrase "child support" does not make the phrase "care and support" ambiguous, especially when there is no indication that the Legislature has ever used the phrase "care and support" in a manner that is inconsistent with our longstanding use of the phrase.[1]

Additionally, the majority's reliance on the presumption against surplusage is misplaced in this case. In *Freeman v. Quicken Loans, Inc.*, the United States Supreme Court recently explained that the presumption against surplusage did not undermine its conclusion that the words in the statutory phrase "portion, split, or percentage" "all mean the same thing—a perhaps regrettable but not uncommon sort of lawyerly iteration" like " 'give, grant, bargain, sell, and convey.' " —— U.S. ——, 132 S.Ct. 2034, 2042–43, 182 L.Ed.2d 955 (2012).[2] Such lawyerly iterations are com-

---

1. The majority asserts that under the interpretation "adopted by Justice Lillehaug, the term 'support,' standing alone, refers to the obligation to provide monetary assistance or other material necessities." *Supra* at 438. Based upon that assertion, the majority argues that Justice Lillehaug and I "do not entirely agree on how to read the care-and-support statute," and therefore the statute is ambiguous. *Supra* at 438 n. 3. The majority's argument is unavailing because Justice Lillehaug does not conclude that the term "support," standing alone, refers to the obligation to provide mon-

etary assistance. Instead, Justice Lillehaug's analysis *assumes without deciding* that the phrase "care and support" refers to two distinct commands. Although Justice Lillehaug and I have analyzed the statutory interpretation issue differently, nothing in our competing analyses suggests that the phrase "care and support" is ambiguous.

2. The majority attempts to distinguish *Freeman* based on the Court's comment that Freeman's proposed interpretation of the phrase "portion, split, or percentage" also failed to avoid surplusage. —— U.S. ——, 132 S.Ct. at

monly referred to as "doublets." *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 11.2(f) (2d ed.2006) (listing over 100 examples of doublets); *see also In re Ocwen Loan Servicing LLC*, 491 F.3d 638, 646 (7th Cir.2007); *Doe v. Boland*, 698 F.3d 877, 881 (6th Cir.2012) (explaining that the federal code is "replete with meaning-reinforcing redundancies: an invalid contract is 'null and void'; agency action must not be 'arbitrary and capricious'; bureaucrats send 'cease and desist' letters; a bankruptcy trustee can sell a debtor's property 'free and clear' of other interests; and so on"). When drafters use a doublet, the presumption against surplusage does not apply because in such cases the "drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach."[3] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012). I conclude that the phrase "care and support" is a doublet, and therefore the presumption

against surplusage is not controlling in this case. My conclusion is supported by the fact that Minn.Stat. § 609.375, subd. 1, contains a second doublet in the phrase "knowingly omits and fails."

Finally, the majority's analysis relies on an uncommon dictionary definition of the word "care" to artificially create separate obligations to provide "care" and to provide "support." Specifically, the majority relies upon a definition of "care" in *The American Heritage Dictionary of the English Language* to argue that "care" means watchful oversight, attentive assistance, or supervision of a spouse or child. But the most common definition of "care" is "[a] concerned or troubled state of mind, as that arising from serious responsibilities; worry." *The American Heritage Dictionary of the English Language* 281 (5th ed.2011). The next two definitions of care are "[a]n object or source of worry, attention, or solicitude" and "[i]nterest, regard, or liking." *Id.* Instead of using the most common definitions of "care," the majority reaches to the sixth and seventh

2043. But the inadequacy of Freeman's proposed interpretation does not affect the Court's acknowledgement of lawyerly iterations that use different words to refer to the same thing.

**3.** The majority attempts to redefine "legal doublet" as any phrase that contains a meaningless word. Based on its new definition of "legal doublet," the majority contends that we must first apply the canon of surplusage to the phrase "care and support" and only if we can ascribe no separate meaning to the word "care," can we declare the "phrase to be a legal doublet." *Supra* at 438–40. Additionally, the majority notes that the phrase "care and support" is not identified in the list of over 100 common legal doublets set forth in Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 11.2(f) (2d ed.2006). The majority's analysis is unpersuasive for three reasons. First, under the majority's definition of "legal doublet" a number of well-established

legal doublets like "aid and comfort" would no longer be considered a legal doublet because a court could plainly ascribe separate meanings to the words "aid" and "comfort" using the common dictionary definitions of the two words. Second, the majority's analysis reflects the precise type of reasoning that led commentator Bryan Garner to advise against the use of legal doublets when drafting documents. Bryan A. Garner, *Garner's Dictionary of Legal Usage* 296 (3d ed.2011). More specifically, Garner has emphasized that the presumption against surplusage could be used to give a legal doublet "unforeseen meanings by clever interpreters," especially when one is faced "with less common doublets." *Id.* Third, the majority does not consistently apply its legal-doublet analysis to the language of Minn.Stat. § 609.375. More specifically, the majority effectively declares the phrase "omits and fails" to be a legal doublet meaning "not" without first applying

definitions to determine its meaning, which are the least common uses of the word "care." [4] It is easy to understand why the majority chose not to use the most common and ordinary definition of "care." If one ascribes the most common definition of "care" to the statutory phrase "care and support," the majority's proposed interpretation is strained and lacks common sense. Specifically, under such an interpretation the statute would require a person to separately "care" for a minor child or ex-spouse by having a concerned or troubled state of mind or by worrying. Moreover, even if one ascribes the less common "watchful oversight" definition of "care" to the statutory phrase "care and support," the majority's proposed interpretation lacks common sense because the Legislature used the word "care" to apply to "a spouse or child." Under such an interpretation, the statute would require a person to provide "watchful oversight" to an ex-spouse.[5] In my view, it is unreasonable for the majority to reject our longstanding use of the phrase "care and support" over the last 90 years in favor of an uncommon dictionary definition of the word "care" which produces a strained and illogical interpretation of the statute.

---

the presumption against surplusage. *Supra* at 440.

4. According to *The American Heritage Dictionary of the English Language,* entries containing more than one sense "are arranged for the convenience of the user with the central and often the most commonly sought meaning appearing first." *The American Heritage Dictionary of the English Language* xxiv (5th ed.2011).

5. The majority concedes that the most common definition of "care" "makes no sense in the context of the care-and-support statute." *Supra* at 437 n. 2. Nevertheless, the majority argues that this fact bolsters its analysis because it illustrates the "basic principle that the relevant definition of a term depends on the context in which the term is used." *Id.*

## III.

In sum, when the phrase "care and support" in Minn.Stat. § 609.375 is ascribed its longstanding technical meaning, the phrase unambiguously refers to a person's obligation to pay court-ordered child or spousal support. The majority's interpretation of the statutory language is strained and illogical because it ignores our longstanding use of the phrase "care and support," fails to acknowledge that the presumption against surplusage does not apply to doublets, and ascribes a less common dictionary definition to the word "care" that artificially creates separate obligations to "care" and to provide "support."

For the foregoing reasons, I would affirm Nelson's conviction.

LILLEHAUG, Justice (dissenting).

Because the majority misreads an unambiguous statute and thereby undermines an important child support enforcement law, I respectfully dissent.

## I.

This case requires us to interpret Minn. Stat. § 609.375 (2012), captioned "Non-support of spouse or child."[1] We review

---

More specifically, the majority contends that its reliance on the sixth and seventh definitions, which define "care" as "[w]atchful oversight; charge or supervision ... [or] [a]ttentive assistance or treatment to those in need," is appropriate because the sixth and seventh definitions are the first definitions that make sense in the context of a child. The majority's argument is unavailing because, as discussed above, the Legislature used the word "care" in the context of "a spouse or child," and the "watchful oversight" definition of "care" makes no sense in the context of an ex-spouse.

1. This is the law the majority repeatedly refers to as the "care-and-support statute." While this case involves child support, the law also covers court-ordered spousal maintenance.

questions of statutory interpretation de novo. *State v. Hayes*, 826 N.W.2d 799, 803 (Minn.2013). The object of statutory interpretation and construction is to ascertain and effectuate the intention of the Legislature. Minn.Stat. § 645.16 (2012); *State v. Crawley*, 819 N.W.2d 94, 102 (Minn.2012). When interpreting a statute, we construe words and phrases "according to the rules of grammar and according to their common and approved usage," unless "technical words and phrases ... have acquired a special meaning." Minn.Stat. § 645.08 (2012); *see also Hayes*, 826 N.W.2d at 803. If the statutory language "is susceptible to only one reasonable meaning," the statute is unambiguous and we must "apply the statute's plain meaning." *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn.2010) (citation omitted) (internal quotation marks omitted).

### A.

Passed in 1963, Minn.Stat. § 609.375 created criminal liability and penalties for child support obligors who are knowingly delinquent. The statute provides that "[w]hoever is legally obligated to provide care and support to a spouse or child ... and knowingly omits and fails to do so is guilty of a misdemeanor." Minn.Stat. § 609.375, subd. 1. If an obligor is more than 90 days delinquent or is in arrears for an amount equal or greater than six times the obligor's monthly obligation, then the violation of the statute is a gross misdemeanor. Minn.Stat. § 609.375, subd. 2. If an obligor is more than 180 days delinquent or in arrears for an amount equal or greater than nine times the obligor's monthly obligation, then the violation is a felony. Minn.Stat. § 609.375, subd. 2a.

I read section 609.375, subdivision 1, to establish, unambiguously, a crime consisting of three elements: (1) a legal obligation to provide "care and support"; (2) omitting and failing to "do so," that is, to fulfill the legal obligation; and (3) omitting and failing to fulfill the legal obligation "knowingly." In this case, appellant Larry Allen Nelson admitted that all three of these elements were met. He stipulated that he had a legal obligation to provide "care and support" to his children. He further stipulated that he failed to pay the court-ordered support. Finally, he stipulated that his failure to pay was knowing and without lawful excuse. Accordingly, by knowingly violating his legal obligation, Nelson violated section 609.375, subdivision 1.

Nelson contends that the statute's use of the phrase "care and support" requires that the State must prove *both* that the defendant knowingly failed to provide monetary "support" and, *separately*, that the defendant knowingly failed to provide non-monetary "care." As a matter of plain meaning, I do not—and cannot reasonably—read the statute as Nelson urges. The word "and," located between the words "care" and "support," does not create an additional element that the state must satisfy. The plain words of the statute focus on what the defendant is *legally obligated* to do; thus, the crime is committed by the defendant's knowing failure to *do so*, that is, the failure to fulfill the defendant's legal obligation. If I am legally commanded to do more than one thing, then I violate my *legal obligation* when I fail to *do so* by failing to perform each command.[2] Thus, even if the phrase "care and support" were read to constitute two

---

2. For example, in a trade secret case, if a defendant were legally obligated by court order to stop using a trade secret *and* to return all protected data, no defendant could reasonably assert that its legal obligation had been fulfilled by compliance with only one of the court's commands. To fulfill its legal obligation, such defendant must stop using the secret *and* return the data.

distinct commands (which we need not decide today), certainly knowing failure to pay court-ordered child support is enough to violate the legal obligation.

## B.

The majority acknowledges that the way I read the statute is reasonable. But the majority also finds reasonable Nelson's proposed alternative construction, requiring the State to prove, not just knowing failure to provide support, but also knowing failure to provide non-monetary "care." In my view, the alternative construction is unreasonable for four reasons.

First, as discussed above, the alternative construction is unreasonable as a matter of logic and grammar. The focus of the statute is on violation of a legal obligation: in this case, a district court order. If the Legislature had truly intended to require proof of two separate violations of a legal obligation, it would have used the word "both" rather than "so" in the phrase "knowingly omits and fails to do so." [3]

Second, the alternative construction of subdivision 1 runs headlong into the language of the rest of the statute. *See Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) ("We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections...."). Section 609.375 makes clear that knowing non-support is a crime, without reference to any non-monetary "care" that a defendant might provide.

Under subdivision 2b, one may not be charged at all under subdivision 1 (or be eligible for the enhancements of subdivisions 2 and 2a) without a prior attempt to obtain a contempt order "for failing to pay support or maintenance." Enhancements under subdivisions 2 and 2a are triggered if "the violation" (in the singular, meaning the violation of one's legal obligation) continues for a specified period of time, or if the defendant "is in arrears in court-ordered child support or maintenance payments, or both" in a multiple of the monthly obligation. Subdivision 5, which establishes venue, makes clear that subdivision 1 is aimed at "the support obligor." So does subdivision 7: work release is allowed only upon automatic income withholding, and upon conviction of a felony, "[n]onpayment of child support is a violation of any probation granted." [4]

The premise of each subdivision is that a knowing violation of one's legal obligation is a violation of the statute. Each subdivision suggests that a knowing failure to pay child support violates one's legal obli-

**3.** *Farnam v. Linden Hills Congregational Church,* 276 Minn. 84, 93, 149 N.W.2d 689, 696 (1967), cited by the majority, supports, rather than undermines, my reading. The case involved the worker compensation act's exclusion of an injured person if the person met two criteria connected by the word "and." If either criterion was not met, the person was not excluded and remained covered by the act. *Id.* Similarly, here, one with a legal obligation to provide both care and support is liable, and is not *excluded* from liability, by failing to provide support.

**4.** Subdivision 8 of section 609.375 is not to the contrary. It creates an affirmative defense of excuse whereby a defendant may show that "the omission and failure to provide care and support were with lawful excuse." The use of the word "and" in this context is consistent with my reading of subdivision 1 and with *Farnam,* 276 Minn. at 93, 149 N.W.2d at 696. A defendant is not excused from liability if the defendant complies only partially with the legal obligation imposed by court order. If, as suggested by the majority, the Legislature intended to penalize only "profoundly delinquent" parents who fail to provide *both* care and support, then the defense should be available to a defendant with an excuse for failure to provide *either* care *or* support. But that is not what subdivision 8 provides.

gation. There is no indication whatsoever in section 609.375, read as a whole, that the intent of the Legislature was to criminalize only the conduct of what the majority calls "profoundly delinquent" parents who fail to provide *both* non-monetary care and monetary support.

Third, the alternative construction is unreasonable because it conflicts directly with two additional child support statutes that specifically reference and tie themselves to section 609.375.

The statute that immediately follows section 609.375 is Minn.Stat. § 609.3751 (2012). Passed in 2001, section 609.3751 gives prosecutors and defendants in a section 609.375 case an alternate remedy for the benefit of victims. A defendant charged with a violation of section 609.375 may avoid a judgment of guilt by agreeing to probation on condition of a "written payment agreement regarding both current support and arrearages." Minn.Stat. § 609.3751, subd. 2. The defendant may receive an early dismissal but "only if the full amount of any arrearages has been brought current." Minn.Stat. § 609.3751, subd. 4. A failure to comply with the written payment agreement may lead to adjudication of guilt. Minn.Stat. § 609.3751, subd. 3. Section 609.3751 does not reference any separate obligation or failure to provide "care"; rather, it assumes that, under section 609.375, subdivision 1, knowing failure to pay child support is a crime.

If the Legislature had intended to penalize only "profoundly delinquent" parents, as the majority speculates, then the Legislature contradicted its own intent by passing section 609.3751.

Minnesota Statutes § 518.68 (2012) also confirms that my straightforward reading of section 609.375 is precisely as the Legislature intended it. Section 518.68 requires that every court order providing for child support must contain the following "IMPORTANT NOTICE":

> 3. NONSUPPORT OF A SPOUSE OR CHILD—CRIMINAL PENALTIES
>
> A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

Minn.Stat. § 518.68, subd. 2. This required notice,[5] expressly invoking section 609.375, could not be clearer: in Minnesota, a knowing failure to pay child support is a crime.[6] The alternative reading of the statute that the majority concludes is "reasonable" would render legally defective the statutorily-required notice provided by the Legislature in section 518.68.[7]

Fourth, remembering that the statute covers both child support and spousal sup-

---

**5.** This notice was attached to the district court's order of September 27, 2006, adjudging Nelson to be in continuing constructive civil contempt for willful failure to pay child support.

**6.** The statutory notice further makes clear that "[p]ayment of support ... is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation." Minn.Stat. § 518.68, subd. 2. This provision shows that the focus of section 609.375 is the "legal

obligation" to comply with the court order. Failing to pay child support cannot "fulfill the obligation" of a court order that requires child support payments.

**7.** The use of the term "may," rather than "shall" or "must," in the notice does not undermine its clarity and obvious intent. A violation of the legal obligation may or may not be "knowing," and, in any event, the prosecutor retains discretion whether or not to charge.

port, the alternative construction of the statute is unreasonable when applied to spousal support. The majority interprets the word "care" as "watchful oversight; charge or supervision." But it is unreasonable (indeed, absurd) to conclude that the Legislature required that, in a prosecution for violation of the legal obligation to provide spousal support, the State must also prove that the defendant failed to provide a former spouse watchful oversight, charge, or supervision. Many ex-spouses would not welcome that kind of "care."

For these reasons, the majority's alternative construction of section 605.375, subdivision 1, is unreasonable. Therefore, considering the plain language of section 609.375 in light of statutes that cross-reference it, I see no ambiguity in subdivision 1. The statute's words "legally obligated," "support," and "knowingly omits and fails to do so" straightforwardly establish three clear and unambiguous elements of a crime, all of which Nelson stipulated were met here. Accordingly, we must hold, as a matter of law, that Nelson violated section 609.375.

## C.

The foregoing analysis is sufficient to resolve the issue before the court. Because section 609.375, subdivision 1, unambiguously criminalizes knowing failure to pay child support, we need not define the meaning of the word "care" and consider whether it includes, or is limited to, non-

monetary benefits.[8] We need not determine whether the phrase "care and support" may be a technical phrase that has acquired special meaning under Minn.Stat. § 645.08.[9] Nor need we consider today whether someone not delinquent on child support could be convicted under section 609.375 solely for knowingly failing to fulfill a legal obligation to provide "care."

Finally, because the statute is unambiguous, we need not consider other matters in ascertaining the intention of the Legislature, such as those in Minn.Stat. § 645.16 (listing eight factors to ascertain legislative intent). These include the occasion and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, and the consequences of alternative interpretations.

Instead of discussing the rules of statutory construction, the majority leaps directly to the common law rule of lenity. While common law rules of construction survive under Minnesota's criminal code, *see* Minn.Stat. § 609.015, subd. 1 (2012), there is no good reason to bypass the Legislature's own rules of construction as we determine whether a criminal law "fairly defin[es] the acts and omissions prohibited," Minn.Stat. § 609.01, subd. 1(2) (2012). The rule of lenity should come "into operation at the end of the process of construing what . [the legislative branch] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan v. United States,*

8. The court of appeals determined that the phrase "care and support" was ambiguous simply because the statute did not define those terms. *State v. Nelson,* 823 N.W.2d 908, 911 (Minn.App.2012). But the mere absence of a definition does not amount to ambiguity. *Brainerd v. Brainerd Invs. P'ship,* 827 N.W.2d 752, 757 (Minn.2013). In this case, there is no ambiguity in the words that make knowing failure to pay child support a crime.

9. If, instead of construing the words of section 609.375 "according to rules of grammar and according to their common and approved usage" pursuant to Minn.Stat. § 645.08, I were required to reach the issue of whether the phrase "care and support" has acquired a "special meaning," I would join the dissent of Justice Dietzen which carefully reviews how this court has used the phrase.

364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961). That a law is criminal "does not require us to assign the narrowest possible interpretation to the statute." *State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993).

Having thus leapt, the majority applies the rule of lenity in what could fairly be described as a knee-jerk fashion. As the United States Supreme Court has made clear, a statute that is "not a model of the careful drafter's art" is not enough to trigger the rule. *See United States v. Hayes*, 555 U.S. 415, 429, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009). Instead, "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what" the legislative branch intended. *Barber v. Thomas*, 560 U.S. 474, 488, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010) (citations omitted) (internal quotation marks omitted).

In this case, there is no "grievous ambiguity or uncertainty." We need not "simply guess" as to whether the Legislature intended to criminalize knowing failure to pay support. Indeed, I cannot help but express regret that the majority's decision today eliminates, or at least badly dulls, a well-established, important tool created by the Legislature to enforce court orders for the benefit of children and spouses.

By national standards, Minnesota has an excellent child support enforcement program, but the task remains daunting. As of June 30, 2012, the total amount of out-standing Minnesota child support debt was $1.688 billion, of which 85% was more than a year old.[10]

For half a century, section 609.375 has served as the final option for Minnesota child support enforcement. Usually a criminal non-support charge is reserved for obligors who are the most persistent or flagrant in their knowing refusal to comply with court orders.[11] Undoubtedly other obligors make last-minute payments to avoid prosecution. Minnesota's children and care-givers have been the beneficiaries of sections 609.375 and 609.3751.

The importance of criminal liability for non-support is evident from this case. The record shows that in 1994 the district court ordered Nelson to pay support for his two children but that, not long thereafter, Nelson stopped paying. By 2006 he was in arrears for more than $72,000. Nelson has been held in civil contempt on multiple occasions, *see State v. Nelson*, 671 N.W.2d 586, 588 (Minn.App.2003), including for refusal to provide financial information.

By requiring proof beyond a reasonable doubt of new, additional elements of knowing failure to provide non-monetary "care," the majority's decision today handcuffs the State from using section 609.375 to prosecute knowing non-support. It is possible that, as a result of the majority's holding and in the absence of swift legislative correction, Minnesota could become the only state without viable criminal sanctions for failure to pay child support.[12] While the

---

**10.** Child Support Enforcement Div., Minn. Dep't of Human Servs., *2012 Minnesota Child Support Performance Report* 21, charts 4, 5.

**11.** According to data gathered and maintained by State Court Administration in the Minnesota Court Information System (MNCIS) Justice database, in the last decade Minnesota prosecutors have filed section 609.375 charges against 860 defendants.

**12.** *See* Carmen Solomon–Fears, Alison M. Smith & Carla Berry, Cong. Research Serv., *Child Support Enforcement: Incarceration as the Last Resort Penalty for Nonpayment of Support* 24–27 (2012), http://greenbook. waysandmeans.house.gov/sites/greenbook.

federal government has recognized the national importance of criminal enforcement for willful failure to pay support,[13] federal jurisdiction and investigative resources are limited. There is no adequate substitute for state enforcement of section 609.375.

## II.

Finally, given my reading of section 609.375, subdivision 1, I agree with the court of appeals' holding that the district court did not abuse its discretion by excluding as irrelevant evidence of Nelson's non-monetary care of his children. Nelson was charged with omitting and failing to fulfill his legal obligation by his knowing failure to pay child support. Therefore, evidence of non-monetary care is irrelevant to the charged offense and cannot serve as a defense.

For these reasons, I would affirm the court of appeals on other grounds.

GILDEA, Chief Justice (dissenting).

I join the dissent of Justice Lillehaug.

---

waysandmeans.house.gov/files/2012/documents/R42389_gb.pdf.

**13.** *See* 18 U.S.C. § 228 (2012) (criminalizing willful failure to pay support obligations in interstate situations).